100,510

STATE OF KANSAS, *Appellee*, v. JOE N. MONDRAGON, *Appellant*.
(220 P.3d 369)

Opinion filed December 4, 2009.

*Casey J. Cotton*, of Law Office of Falk & Cotton, P.A., of Wichita, argued the cause, and *Roger L. Falk*, of the same firm, was with him on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: As part of a plea agreement, Joe N. Mondragon pled guilty to two counts of aggravated indecent liberties with a child in violation of K.S.A. 2006 Supp. 21-3504(a)(3)(A). For these convictions, he received concurrent sentences of life imprisonment without the possibility of parole for 25 years and postrelease supervision for life pursuant to K.S.A. 2006 Supp. 21-4643(a)(1), commonly known as "Jessica's Law." On appeal, Mondragon claims the district court abused its discretion in denying his motion for a downward durational departure under K.S.A. 2006 Supp. 21-4643(d). For the first time on appeal, he also challenges his life sentences as a cruel or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights or the Eighth Amendment to the United States Constitution. We reject his arguments and affirm his sentences.

## FACTS AND PROCEDURAL BACKGROUND

Under the plea agreement, the State dismissed a rape charge and agreed to recommend concurrent hard 25 life sentences in exchange for Mondragon's plea of guilty to the two counts of aggravated indecent liberties, both of which had been charged as off-grid felonies. Mondragon was also free to seek a sentencing departure, which he did by filing a motion requesting a downward durational departure.

In support of the motion for downward departure, Mondragon stated that he was 63 years old, had no prior felony convictions, had a consistent employment history, and had a supportive family. At the sentencing hearing, he expanded on these mitigating factors by arguing that a sentencing departure was appropriate because of his diabetic and hypertensive medical conditions and because of his willingness to join a local sex offender treatment program. The district court denied Mondragon's motion after finding that none of the asserted mitigating factors constituted a substantial and compelling reason to depart from the mandatory minimum sentence associated with each crime.

Mondragon filed a timely appeal of his life sentences. This court's jurisdiction is under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

## I. Departure

We first consider Mondragon's argument that the district court erred by denying his request for downward durational departure sentences.

Under the statute in effect when Mondragon's offenses were charged, a first-time offender who is 18 years old or older and convicted of aggravated indecent liberties with a child under the age of 14 must be sentenced to a mandatory lifetime sentence with a minimum of not less than 25 years "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2006 Supp. 21-4643(d). If the sentencing judge departs from the mandatory minimum term, the departure sentence "shall be the sentence pursuant to the sentencing guidelines act, . . . and no sentence of a mandatory minimum term of imprisonment shall be imposed." K.S.A. 2006 Supp. 21-4643(d).

The statute specifies a nonexclusive list of mitigating factors that a judge may consider in determining whether substantial and compelling reasons for departure exist: (1) The defendant has no significant criminal history; (2) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances; (3) the victim was an accomplice, and the defendant's participation was relatively minor; (4) the defendant acted under extreme distress or substantial domination of another person; (5) the defendant's capacity to appreciate the criminality of his or her conduct or conform such conduct to the requirements of the law was substantially impaired; and (6) the defendant's age at the time of the crime. K.S.A. 2006 Supp. 21-4643(d)(1)-(6).

When an appellate court reviews a district court's determination as to whether mitigating circumstances presented under K.S.A. 2006 Supp. 21-4643(d) are substantial and compelling, an abuse of discretion standard of review applies. *State v. Spotts*, 288 Kan. 650, 654-55, 206 P.3d 510 (2009); see *State v. Ortega-Cadelan*, 287 Kan. 157, 165, 194 P.3d 1195 (2008). We have concluded that K.S.A. 2006 Supp. 21-4643(d) grants broad discretion, meaning " ' "judicial discretion is abused when no reasonable person would take the

view adopted by the district judge." ' [Citations omitted.]" *State v. Thomas,* 288 Kan. 157, 164, 199 P.3d 1265 (2009).

Mondragon argues no reasonable person would agree with the district court's conclusion that he had not presented substantial and compelling reasons for departure. On appeal he asserts the following mitigating circumstances warranted departure: (1) a criminal history score of I; (2) his medical ailments, namely diabetes and high blood pressure; (3) his age of 63; (4) a consistent employment history in that he worked at Boeing Military Aircraft for 18 years before retiring within approximately 1 year of sentencing in this case; (5) his supportive family; and (6) his having taken the initiative to visit Dr. Don Blasi, a psychologist, on at least two occasions concerning the sex offenses and his willingness to continue counseling.

The State responds by arguing that the district court was justified in denying departure. The State points out that the district court indicated that it had "plenty of time to think about this case," and a transcript of the sentencing hearing reflects that the court thoroughly considered the mitigating circumstances presented by Mondragon.

As the State argued, the district court considered each of the mitigating factors. Many of those factors carried little weight in the court's view. For example, the district court considered Mondragon's employment history but noted that Mondragon had recently retired. Mondragon's advanced age was also considered by the district court, but the court found his age and maturity level worked against Mondragon because he "should have known better." As for Mondragon's medical conditions, the district court pointed to the fact that members of the prison medical staff routinely care for inmates with those health problems. The district court further noted that despite the lack of previous felony convictions in Mondragon's criminal history, he was prosecuted in 1988 for aggravated incest, a felony, but was granted a 3-year diversion. In citing the diversion, the district court clearly indicated it was not looking to the diversion as criminal history but was focusing on Mondragon's admission to the conduct. In light of that admission, the district court found that behavior "giving rise to the current

crimes of conviction is not an aberration on the part of Mr. Mondragon." Finally, the district court took into consideration the fact that there were two victims in the present case—girls who were 8 and 9 years old at the time of the offenses.

In summary, the district court considered all of Mondragon's arguments, acknowledged the mitigating circumstances asserted by Mondragon, explained why the cited factors were not substantial and compelling reasons to impose departure sentences, and rejected the request for a downward durational departure. Reasonable people could agree with the district court's assessment of whether the mitigating circumstances were substantial and compelling.

The district court did not abuse its discretion by denying Mondragon's motion for downward durational departure sentences under K.S.A. 2006 Supp. 21-4643(d).

## II. CRUEL OR UNUSUAL PUNISHMENT

Mondragon also argues his life sentences violate the right against cruel or unusual punishment provided for in § 9 of the Kansas Constitution Bill of Rights. He briefly refers to the Eighth Amendment to the United States Constitution as well. In asserting the cruel or unusual nature of his sentences, Mondragon presents two arguments. First, he argues that applying the factors of *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), leads to the conclusion the sentences were unconstitutional. Second, he argues a mandatory hard 25 or hard 40 sentence is cruel or unusual in light of procedures and treatments available under the Sexually Violent Predators Act (SVPA), K.S.A. 59-29a01 *et seq*. Both contentions are presented for the first time on appeal.

As Mondragon notes, the determination of whether a sentence is a cruel or unusual punishment because of its length is controlled by a three-factor test stated in *Freeman*. The *Freeman* test states:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

We have noted these factors include both legal and factual inquires, and no one factor controls. *Ortega-Cadelan*, 287 Kan. at 161. Because of the factual inquiries involved in several recent cases, we have refused to consider an argument that a sentence is cruel or unusual for the first time on appeal, citing as reasons that the State has not been given the opportunity to develop a record on the issue and the district court had not made factual findings. *E.g., State v. Easterling*, 289 Kan. 470, 213 P.3d 418 (2009); *Spotts*, 288 Kan. at 653-54; *Thomas*, 288 Kan. at 161; *Ortega-Cadelan*, 287 Kan. at 161.

Mondragon argues that unlike the situation in these cases, the record in this case is sufficient for review of the factual issues. In considering this argument, we must consider our recent decision in *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009), which was filed after the briefs in this case were submitted and which resulted in a remand for the district court to make factual findings regarding whether a Jessica's Law sentence was cruel or unusual. In addition, we must consider Mondragon's argument that the availability of a commitment pursuant to the SVPA makes a lifetime sentence of imprisonment a cruel or unusual punishment. Mondragon argues no factual findings are required in order to consider this argument.

In making his first argument that the record is sufficient for our review, Mondragon does not point to district court findings regarding the *Freeman* factors. Rather, he reiterates the mitigating factors he presented to the court in his motion for departure and corresponding arguments at sentencing. Such an argument ignores the role of appellate courts, which do not make findings but merely review those made by a district court. *Thomas*, 288 Kan. at 161; see also *In re Adoption of A.A.T.*, 287 Kan. 590, 599, 196 P.3d 1180 (2008) (stating that an appellate court does not reweigh evidence,

substitute its evaluation of evidence for that of district court, or pass upon credibility of witnesses).

Furthermore, as in *Easterling*, 289 Kan. at 486-87, the factual findings in the record as a result of the district court's denial of Mondragon's request for a downward departure cut against a finding that the sentences are cruel or unusual. For example, the district court expressed concern about there being multiple victims and noted that because of Mondragon's age and maturity "he should have known better" than to sexually molest the young girls in this case. Regardless, these factual findings are simply insufficient to consider the application of the *Freeman* factors.

Next, we consider whether this case is similar to *Seward*, 289 Kan. 715. In *Seward*, the defendant mentioned his cruel or unusual punishment argument during plea negotiations, included it in his written downward departure motion, and reiterated the claim on the record at the sentencing hearing. This court held the issue was sufficiently raised before the district court and that the district court should have made the necessary findings. *Seward*, 289 Kan. at 720. After discussing the relative responsibilities of the district court and the defendant to assure there are sufficient findings for appellate review, we remanded the case. However, we cautioned:

"We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." *Seward*, 289 Kan. at 721.

In contrast to the record in *Seward*, which reflected efforts by the defendant to raise the issue before the district court, in this case we can find no mention of the phrase "cruel or unusual punishment" in the record of proceedings before the district court. Because there was no effort before the district court to present the issue of whether a Jessica's Law sentence is cruel or unusual, the issue cannot be raised for the first time on appeal.

Finally, we conclude that Mondragon's argument regarding the SVPA does not change this analysis. There are several reasons for this conclusion. First, in *Kansas v. Hendricks*, 521 U.S. 346, 362, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), the United States Su-

preme Court concluded that an involuntary commitment under the SVPA was civil in nature and was not punitive. Hence, a commitment under the SVPA is not a "punishment" to be compared under the second prong of the *Freeman* test. Moreover, there are necessary factual components that underpin Mondragon's argument that the SVPA would apply. Specifically, the applicability of the SVPA is conditioned on a finding that an individual who has been convicted of a sexual offense is a "sexually violent predator," a term which is defined as "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2006 Supp. 59-29a02(a); see also K.S.A. 2006 Supp. 59-29a07(a) (committing person until "such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large"). There is no showing in the record that Mondragon would meet this definition and, therefore, that commitment under the SVPA is an alternative.

Consequently, we conclude Mondragon's claim that his life sentences under K.S.A. 2006 Supp. 21-4643(a)(1) constitute cruel or unusual punishment is not properly before this court.

Affirmed.