No. 100,000

STATE OF KANSAS, *Appellee*, v. ISRAEL REYNA, *Appellant*.

(234 P.3d 761)

Opinion filed June 4, 2010.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Amy E. Taylor*, assistant county attorney, argued the cause, and *Christine Tro-check*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Israel Reyna appeals from convictions of four counts of aggravated indecent liberties with a child under K.S.A. 2006 Supp. 21-3504. He was sentenced to life with no possibility of parole for 25 years pursuant to K.S.A. 2006 Supp. 21-4643(a)(C) and (c), commonly known as Jessica's Law. He raises a number of issues on appeal. This court's jurisdiction is under K.S.A. 22-3601(b)(1).

In December 2006, Reyna lived in Salina with his ex-wife, Kelly. The two had divorced but later reconciled. Kelly operated a day-care center out of their home. One of the children that she routinely cared for was the 6-year-old daughter, B.B., of her brother, Scott B. B.B. had two brothers. Scott had been seeing a woman named Amber E., who had two children: a girl, 7-year-old A.E., and a boy.

December 22, 2006, was Scott's 30th birthday and Amber had planned a surprise party for him at a Salina establishment called "The Scheme." Kelly wanted to attend the party but had also agreed that Scott's and Amber's children could stay at her house. Amber dropped the children off around 5:30 p.m.

Kelly left for the party around 8 p.m. Reyna decided not to go because most of Kelly's family would be there and his relations with them were strained. Kelly indicated that she did not intend to stay long. Kelly and Reyna's sons, Matt, age 13, and Aaron, age 11, were left in charge of the younger children, with Reyna present as the responsible adult.

While Kelly was gone, Reyna sat in their upstairs bedroom listening to music, watching television, and drinking whiskey and Coke. Aaron mostly stayed in his room, also upstairs near his parents' bedroom. Matt mostly stayed downstairs. The smaller children, A.E., B.B., and the three boys, apparently ran wild throughout the house, wrestling, getting into Kelly's makeup, making tents in the upstairs hallway, watching television, and playing video games with Aaron. A.E. and B.B. also spent some time in Reyna

and Kelly's bedroom with Reyna. While Kelly was gone, a friend of hers called and talked to Reyna on the phone for 30 to 45 minutes.

As Kelly was leaving the party, Amber asked her if the children could spend the night at Kelly's so that Amber could continue partying with Scott and friends. Kelly agreed to keep the children. A.E. and B.B. were excited to learn that they would spend the night and slept on the living room couch together.

A.E. returned to school following the holiday break on January 4th. She attended an after-school care program. That afternoon, the supervisor of the program called Amber to come to the school. A.E. had told one of the program adults that Reyna had engaged in inappropriate sexual conduct with her and B.B. Amber called Scott. Scott and Kelly later brought B.B. from Kelly's house to the house where Amber and Scott were living. On the way, Scott asked B.B. if there was anything she needed to tell him. After first confessing that she got in trouble for hitting someone in daycare, she then said that Reyna had touched her "privates."

Reyna was charged with one count of rape or, in the alternative, aggravated indecent liberties with each child. He was also charged with a second count of aggravated indecent liberties with each child. The complaint set out his year of birth, and he testified at trial that he was 37 years of age; however, the complaint did not allege as part of the charges of aggravated indecent liberties with a child that he was over the age of 18 at the time of the offenses, nor was the jury instructed to determine his age.

The State questioned the prospective jurors during voir dire for over an hour. Shortly into the defendant's voir dire, the trial judge called counsel to the bench and a discussion was had off the record. Defense counsel resumed questioning of the prospective jurors but later put on the record that she had felt limited by an admonition from the judge during the off-the-record discussion.

During trial, the State presented the testimony of a child sexual abuse therapist, Joni Alberts-Plumer. Prior to trial, the defense objected to the therapist testifying about her counseling of the victims, reasoning that any testimony that she had counseled them necessarily implied a finding that they had been sexually abused.

The court agreed and limited the therapist's testimony to general statements concerning the behavior of child sexual abuse victims. The defense registered a continuing objection to her testimony at trial.

Both A.E. and B.B. testified at trial. Although their testimony was a bit sketchy, as might be expected from a 7- and 6-year old, respectively, they both testified that Reyna had touched their vaginal areas and made them touch his genitals.

The jury returned guilty verdicts on two counts of aggravated indecent liberties against A.E. and on both the rape count and the alternative count of aggravated indecent liberties against B.B., in addition to the stand alone count of aggravated indecent liberties against B.B. The trial court later dismissed the rape conviction.

The defense filed a posttrial motion for a new trial and a motion for sentencing under the Kansas Sentencing Guidelines Act (KSGA), alleging that the failure to plead and prove Reyna's age, an element of the off-grid offense, required sentencing him under the KSGA rather than treating the convictions as off-grid felonies under K.S.A. 2006 Supp. 21-4643. The defense also filed a motion for dispositional and durational departure from the sentence set out in K.S.A. 2006 Supp. 21-4643(d). The trial court denied the motions and sentenced Reyna to a controlling sentence of life with a hard 25 years. He timely appealed.

## SUFFICIENCY OF THE EVIDENCE

Reyna first argues that there was insufficient evidence to support his convictions.

"When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009) (citing *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 [2007]).

Reyna was convicted of four counts of aggravated indecent liberties with a child under K.S.A. 2006 Supp.21-3504(3)(A). In order to convict Reyna of Counts 1 and 3 of the complaint, the State had to prove, with respect to each of the victims, that:

1. Reyna fondled or touched the person of the victim in a lewd manner, with the intent to arouse or to satisfy the sexual desires of either the victim, Reyna or both;

2. The victim was under the age of 14; and

3. The act occurred on or about December 22, 2006, in Saline County, Kansas.

In order to convict Reyna of Counts 2 and 4 of the complaint, the State had to prove, in lieu of the first element above, that Reyna submitted to the lewd fondling or touching of his person by the children. The complaint alleged that each of these crimes was an off-grid felony, which would also require the State to show that Reyna was over the age of 18 at the time the crime was committed. That allegation, and the fact that it was not alleged or proven by the State at trial, will be addressed separately.

In their respective briefs, Reyna and the State go to great lengths to summarize the evidence presented and to demonstrate either the inconsistencies or the similarities. It is clear from the evidence presented that the stories of the two victims were not entirely consistent over the time between January 4, 2007, when the allegations first came to light, and July 25, 2007, when they testified at trial. In the interim, they each repeated their allegations at least four times, and those allegations were in turn relayed through the testimony of witnesses at trial.

The most significant difference reported in the stories of the victims appears to be in that of A.E., whose after-school caregivers testified that A.E. originally reported that the two victims had been made to touch and kiss each other and had been given beer by Reyna. Other adults who interviewed A.E., including her mother, the investigating officer, and the sexual assault nurse examiner, testified that A.E. reported that she had been touched on her vagina by Reyna and then made to touch his genitals. The videotaped interview of A.E. by the investigating officer is consistent with this version.

B.B. appeared to be the less forthcoming of the two victims. Her father, A.E.'s mother, the investigating officer, and the nurse examiner all testified that she told them that Reyna had touched "her privates" and had made her touch him.

The victims' stories differed in some details. For instance, A.E. testified that Reyna had touched her first and then B.B., whereas B.B. testified that she was touched first. There were some differences in their reports as to who had been where in the room at the time of the touching. Despite these differences, however, the victims painted a substantially similar picture of what happened in Reyna's bedroom, *i.e.*, that he touched each of them on their vaginas and that he made them touch his genitals. There was no real dispute about where or when the events took place, and none with regard to the victims' ages.

Reyna points to a conversation that supposedly occurred in a car in which Kelly, Kelly's mother, and B.B. were riding some time following the events at issue. Kelly testified that during the conversation, B.B. said that if she had to take a lie detector test she would end up in jail. Kelly's mother was called to testify about this conversation and denied ever hearing it take place. In addition, other testimony at trial indicated that Kelly was attempting to protect her ex-husband and shed doubt on the credibility of her testimony regarding B.B.'s alleged statement.

Reyna relies upon *State v. Matlock*, 233 Kan. 1, 660 P.2d 945 (1983), to support his argument that the uncorroborated testimony of the two victims was insufficient to support the convictions against him. In *Matlock*, while reaffirming the rule that the uncorroborated testimony of the prosecutrix in a rape case could support a conviction of rape, the court found that, under the facts of the case, no rational factfinder could find the testimony of the prosecutrix credible and, therefore, it was insufficient to support the conviction. 233 Kan. at 3-6. The facts in *Matlock* are similar to this case in that the alleged attack took place in a home where others were present who testified that they saw and heard nothing, and the report of the crime by the victim was delayed. All similarities end there, however. In *Matlock*, not only was there absolutely no corroborating evidence for the victim's statement, there was much evidence inconsistent with it.

In this case, Reyna admitted to the victims being in his bedroom during the evening. The testimony of the others present in the house did not foreclose the possibility of the crimes having oc-

curred as described by the victims. The testimony of each victim corroborated the other's on the key details. Most significantly, the testimony of Scott, B.B.'s father, that B.B. independently corroborated A.E.'s story on the day the allegations first came to light is strong evidence that the crimes occurred. Notably, Kelly was present when B.B. made her initial statement to her father and did not contradict his testimony at trial.

The victims in this case were ages 6 and 7 at the time of the crimes and trial. Their testimony at trial varied in some detail from that reported by other witnesses to whom they had earlier told of the events leading to the charges. However, in key details, the testimony of the victims corroborated each other's from the time the allegations came to light through the trial. After reviewing all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found Reyna guilty beyond a reasonable doubt.

## DEFENDANT'S AGE

Reyna makes two arguments based upon the failure of the State to allege or present evidence of his age at the time of the offenses. First, he argues that his age is an element of the offense of aggravated indecent liberties with a child under K.S.A. 2006 Supp. 21-4643 and the failure of the State to allege it in the complaint deprived the district court of jurisdiction to sentence him to life in prison. Next, he argues that the failure of the district court to instruct the jury that it must find Reyna was over the age of 18 at the time of the offenses violated his rights under the Sixth Amendment to the United States Constitution as defined in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

### Complaint

Reyna relies on *Apprendi* to argue that his age at the time of the offenses is the constitutional equivalent of an element of the enhanced version of aggravated indecent liberties with a child enacted by K.S.A. 2006 Supp. 21-4643 (commonly called Jessica's Law) because it increases the penalty for the crime beyond the

statutory maximum. He then maintains that under *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999), the age element must be set out in the complaint. Because the complaint did not set out Reyna's age at the time of the offenses, he argues that the district court did not have jurisdiction to sentence him under K.S.A. 2006 Supp. 21-4643. The State argues that Reyna's age was not an element of the offenses, but rather like a prior conviction, it was merely a sentencing factor that did not need to be set out in the complaint at all. Both arguments miss the mark.

The question of whether a complaint or information is sufficient to give the district court jurisdiction is a question of law over which this court has unlimited review. *State v. Scott*, 286 Kan. 54, 62, 183 P.3d 801 (2008). Before addressing the complaint, however, we turn to Reyna's premise that K.S.A. 2006 Supp. 21-4643 sets out a crime.

Reyna was convicted under K.S.A. 2006 Supp. 21-3504, which provides:

"(a) Aggravated indecent liberties with a child is:

. . . .

"(3) engaging in any of the following acts with a child who is under 14 years of age:

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both;

. . . .

"(c) Except as provided further, aggravated indecent liberties with a child as described in subsections (a)(1) and (a)(3) is a severity level 3, person felony. Aggravated indecent liberties with a child as described in subsection (a)(2) is a severity level 4, person felony. *When the offender is 18 years of age or older, aggravated indecent liberties with a child as described in subsection (a)(3) is an off-grid person felony.*" (Emphasis added.)

Thus, it is K.S.A. 2006 Supp. 21-3504(c) which sets out that aggravated indecent liberties with a child is an off-grid crime when the offender is 18 years of age or older. K.S.A. 2006 Supp. 21-4706(d) provides the sentences for off-grid crimes and states, in relevant part:

"(d) As identified in K.S.A. . . . 21-3[5]04, . . . and amendments thereto, if the offender is 18 years of age or older and the victim is under 14 years of age, such

violations are off-grid crimes for the purposes of sentencing. Except as provided in K.S.A. 2006 Supp. 21-4642, and amendments thereto, the sentence shall be imprisonment for life pursuant to K.S.A. 2006 Supp. 21-4643, and amendments thereto."

K.S.A. 2006 Supp. 21-4643, under which Reyna was sentenced, provides:

"(a) (1) Except as provided in subsection (b) or (d), a defendant who is 18 years of age or older and is convicted of the following crimes committed on or after July 1, 2006, shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years unless the court determines that the defendant should be sentenced as determined in paragraph (2):

. . . .

(C) aggravated indecent liberties with a child, as defined in subsection (a)(3) of K.S.A. 21-3504, and amendments thereto."

Several of our recent cases have dealt with this statutory scheme. See, *e.g.*, *State v. Gonzales*, 289 Kan. 351, Syl. ¶¶ 10-11, 212 P.3d 215 (2009); *State v. Bello*, 289 Kan. 191, Syl. ¶¶ 3-4, 211 P.3d 139 (2009). In those cases, we have rejected the notion that K.S.A. 2006 Supp. 21-4643 is a crime-defining statute, pointing out that K.S.A. 2006 Supp. 21-3504 sets out two separate sentencing levels of the offense, the applicable sentencing level turning on whether the defendant is age 18 or older at the time of the offense.

Reyna is correct, however, in arguing that our prior opinions have held, based on *Apprendi*, that the defendant's age at the time of the offense is an element of the crime if the State seeks to convict the defendant of the more serious, off-grid enhanced offense. See *Gonzales*, 289 Kan. at 366-70; *Bello*, 289 Kan. at 195-98. The State's argument that the age issue is merely a sentencing factor that, like a prior offense, may be determined by the judge at sentencing ignores the full impact of *Apprendi*.

Next, we address Reyna's contention that this court is required by *Jones*, 526 U.S. 227, to find that the complaint in this case was insufficient to charge the enhanced version of aggravated indecent liberties with a child that is subject to off-grid sentencing. A similar argument was made and rejected in *Scott*, 286 Kan. at 101-02:

"Scott argues that under *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), aggravating factors, as elements of the offense, must be set forth in the charging document.

"Scott's argument is not persuasive. *Jones* and *Apprendi* both stand for the proposition that, under the grand jury provision of the Fifth Amendment and the notice and jury trial provision of the Sixth Amendment, any fact other than a prior conviction that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. However, Scott fails to recognize that the requirement that such facts be charged in an indictment only applies in federal cases, as the Fifth Amendment's grand jury provision does not apply to the states through the Fourteenth Amendment. See *Ring v. Arizona*, 536 U.S. at 597 n.4; *Apprendi*, 530 U.S. at 477 n.3; *Hurtado v. California*, 110 U.S. 516, 538, 28 L. Ed. 232, 4 S. Ct. 111 (1884)."

*Scott* also sets out part of this court's standard for evaluating the question of whether an information is sufficient to give the district court jurisdiction. After stating that the issue is a question of law, *Scott* provides:

"In analyzing whether an information is sufficient, this court applies one of two tests, depending on when the objection is raised. *State v. Hooker*, 271 Kan. 52, 61, 21 P.3d 964 (2001); see *State v. Hall*, 246 Kan. 728, 764-65, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003). When a defendant files a motion for arrest of judgment based on a defective information, the pre-*Hall* standard applies. *Hall*, 246 Kan. at 764. Under this standard, an information which omits one or more of the essential elements of the crime it attempts to charge is jurisdictionally and fatally defective, and a conviction based on such an information must be reversed. *State v. Sanford*, 250 Kan. 592, 600-01, 830 P.2d 14 (1992). However, even under the pre-*Hall* standard, an information is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or others of the same import so long as the defendant is fully informed of the particular offense charged and the court is able to determine under what statute the charge is founded. *State v. Micheaux*, 242 Kan. 192, 197, 747 P.2d 784 (1987)." 286 Kan. at 62-63.

In this case, Reyna failed to file a motion for arrest of judgment. He raises the argument based on a defect in the complaint for the first time on appeal. Consequently, the applicable test for determining whether the complaint was sufficient is the test set out in *State v. Hall*, 246 Kan. 728, 765, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003):

"[W]e shall look to whether the claimed defect in the information has: (a) prejudiced the defendant in the preparation of his or her defense; (b) impaired in any way defendant's ability to plead the conviction in any subsequent prosecution; or (c) limited in any way defendant's substantial rights to a fair trial under the guarantees of the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, §10. If a defendant is able to establish a claim under either (a), (b), or (c), the defective information claim, raised for the first time on appeal, will be allowed."

This court has applied this test to substantially the same set of procedural facts in two prior cases: *Gonzales*, 289 Kan. 351, and *State v. Gracey*, 288 Kan. 252, 200 P.3d 1275 (2009). As in both *Gonzales* and *Gracey*, the charging document in this case set out Reyna's year of birth in the caption and stated at the bottom of the page that the charges were for off-grid person felonies. Like Gracey and Gonzales, Reyna has not asserted that the preparation of his defense was impeded or that his right to a fair trial was impaired by the complaint. Nor has he shown that the complaint impaired his ability to plead the convictions in a subsequent prosecution. As in *Gonzales* and *Gracey*, we find the failure to allege Reyna's age in the complaint is not grounds to invalidate his convictions of the off-grid offense.

*Jury Instructions*

Reyna relies on *Apprendi* to argue that the omission of the age element from the jury instructions violates his right to trial by jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *Apprendi* provides that any fact, other than the fact of a prior conviction, that enhances a convicted defendant's sentence beyond the statutory maximum for the crime must be found by a jury, not by a judge.

In *Bello*, this court found that "[a] defendant's right to a jury trial is violated where the judge makes the sentence enhancement factfinding, rather than the jury." 289 Kan. at 199 (citing *Cunningham v. California*, 549 U.S. 270, 288-89, 166 L. Ed. 2d 856, 127 S. Ct. 856 [2007]). After noting that the enhanced version of the crime is set out initially in K.S.A. 21-3504(c), *Bello* states that *Apprendi* clarifies "that merely because a state legislature places a

sentence enhancing factor within the sentencing provisions of the criminal code does not mean that the factor is not an essential element of the offense." 289 Kan. at 199 (citing *Apprendi*, 530 U.S. at 495). Having failed to address that element in the trial of Bello, the statutory maximum sentences for the crimes of which he was convicted were to be found in the KSGA. *Bello*, 289 Kan. at 199-200. We reached the same result in *State v. Morningstar*, 289 Kan. 488, 494-95, 213 P.3d 1045 (2009), and *Gonzales*, 289 Kan. at 370-71. The failure to allege and to instruct on the defendant's age was error. Thus, this argument must be resolved in favor of Reyna unless some difference distinguishes this case from those.

This case does differ from *Morningstar*, *Gonzales*, and *Bello* in one significant way. In those cases, there was no evidence before the jury on which it could have based a finding of the defendant's age had it been correctly instructed. That is not the case here. In this case, in response to a question from his own counsel, Reyna stated his age. Thus there was evidence in front of the jury on which it could have based a finding of his age at the time of the offenses.

In *State v. Daniels*, 278 Kan. 53, 57, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004), we reviewed a case in which the district court had inadvertently omitted the element of bodily harm from the instructions to the jury on a count of aggravated robbery. After reviewing prior decisions of this court finding erroneous jury instructions harmless, we considered the United States Supreme Court decision in *Neder v. United States*, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999). *Neder* was a pre-*Apprendi* case in which the trial court had taken the issue of materiality from the jury in a trial involving tax fraud. The Supreme Court concluded that refusing to instruct on the element of materiality on the fraud charges was erroneous. 527 U.S. at 8. Nonetheless, the Court held the error was not of the type that it had previously found to be "structural error," the type of fundamental constitutional error which is so intrinsically harmful as to require automatic reversal. 527 U.S. at 8, 9-16. Thus, the *Daniels* court concluded:

"Under the *Neder* test, 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.' 527 U.S. at 17. Stated another way, the reviewing court 'asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' 527 U.S. at 19. If the answer to that question is 'no,' the error may be held harmless." *Daniels,* 278 Kan. at 62.

*Daniels* went on to consider an argument identical to the one put forth here by Reyna; that despite the rule in *Neder,* under *Apprendi,* the omission of the element in a case where that element makes the difference between severity levels of a crime violates Reyna's constitutional right to trial by jury. The *Daniels* court noted that this court had never applied *Apprendi* in a case involving erroneous jury instructions and held:

"[E]ven if there was *Apprendi*-type error, which we decline to decide, our analysis would still be that the evidence of bodily harm was essentially uncontroverted. Accordingly, we reject Daniels' arguments that the omission of the bodily harm element requires reversal." 278 Kan. at 65.

Since *Daniels,* the United States Supreme Court has decided a case directly addressing whether an *Apprendi*-type error, the failure to submit a sentence-enhancing factor to the jury, can ever be harmless error. In *Washington v. Recuenco,* 548 U.S. 212, 165 L. Ed. 2d 466, 126 S. Ct. 2546 (2006), the Court reviewed a case in which the Washington Supreme Court had based its holding on the premise that an *Apprendi*-type error could never be harmless. Recuenco was charged with assault with a deadly weapon, specifically a handgun. The special verdict form returned by the jury found a deadly weapon involved, but it failed to make the specific finding of a handgun. The trial court imposed a 3-year sentence enhancement for use of a gun instead of the 1-year sentence enhancement that applied to use of a deadly weapon. The Washington Court of Appeals affirmed, but the Washington Supreme Court, relying on *Apprendi* and *Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), reversed. *Blakely* clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of*

*the facts reflected in the jury verdict or admitted by the defendant.*
[Citations omitted.]" 542 U.S. at 303. Considering the *Apprendi*
argument, the Court said:

"The State and the United States urge that this case is indistinguishable from
*Neder*. We agree. Our decision in *Apprendi* makes clear that '[a]ny possible dis-
tinction between an "element" of a felony offense and a "sentencing factor" was
unknown to the practice of criminal indictment, trial by jury, and judgment by
court as it existed during the years surrounding our Nation's founding.' 530 U.S.,
at 478 (footnote omitted). Accordingly, we have treated sentencing factors, like
elements, as facts that have to be tried to the jury and proved beyond a reasonable
doubt. *Id.*, at 483-484. The only difference between this case and *Neder* is that
in *Neder*, the prosecution failed to prove the element of materiality to the jury
beyond a reasonable doubt, while here the prosecution failed to prove the sen-
tencing factor of 'armed with a firearm' to the jury beyond a reasonable doubt.
Assigning this distinction constitutional significance cannot be reconciled with our
recognition in *Apprendi* that elements and sentencing factors must be treated the
same for Sixth Amendment purposes. *Recuenco*, 548 U.S. at 220.

The Court went on to conclude that "[f]ailure to submit a sen-
tencing factor to the jury, like failure to submit an element to the
jury, is not structural error." 548 U.S. at 222.

Thus, *Daniels* stands for the proposition that this court will apply
the harmless error analysis to the omission of an element from the
instructions to the jury when a review of the evidence leads to the
conclusion beyond a reasonable doubt that the omitted element
was uncontested and supported by overwhelming evidence, such
that the jury verdict would have been the same absent the error.
And *Recuenco* stands for the proposition that characterizing the
omission as an *Apprendi*-type error, *i.e.*, judicial factfinding of the
omitted element when that element enhances the maximum ap-
plicable sentence, does not change that analysis.

The dissent argues that the instructions in this case were not
erroneous but that argument rests on an assumption that Reyna
was charged with the severity level 3 crime, and we have just held
he was not. While the complaint failed to include the off-grid
element in the individual counts charging the crimes, the complaint
overall adequately charged him with the off-grid offenses. There-
fore, the instructions were erroneous in that they omitted an ele-
ment of those offenses, specifically, the defendant's age at the time

of the offenses. Moreover, it should be emphasized that Reyna, in his brief to this court, frames the issue in terms of erroneous instructions.

Our review of the evidence in this case reveals that Reyna testified he was 37 years of age at the time of the trial. There was no conflicting evidence or, indeed, any other evidence at all concerning his age. Asking whether the record contains evidence that could rationally lead to a contrary finding with respect to the element that the defendant was over the age of 18 at the time of the crime, we conclude that it does not and, further, that the omission of the element from the jury instructions was, therefore, harmless error. Moreover, for the same reasons, we are convinced that the *Apprendi*-type error that occurred when the trial court made the age determination and imposed sentence on Reyna under K.S.A. 2006 Supp. 21-4643, was harmless. We affirm Reyna's sentence.

## Expert Testimony

Reyna maintains that the trial court erred in admitting the expert testimony of Joni Alberts-Plumer concerning the behavioral characteristics of children who have been sexually abused. K.S.A. 60-456(b) governs the admission of expert testimony:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

"Generally, the admission of expert testimony lies within the sound discretion of the trial court, and its decision will not be overturned absent an abuse of such discretion. [Citations omitted.]" *State v. Johnson*, 286 Kan. 824, 831, 190 P.3d 207 (2008).

Alberts-Plumer is a licensed clinical marriage and family therapist, who specializes in children who are sexually abused. Reyna initially objected to Alberts-Plumer testifying that she had counseled A.E. and B.B. after the alleged assaults on the grounds that any evidence she had counseled them was tantamount to introducing her opinion that they had in fact been sexually abused. The trial court agreed such testimony would be inadmissible but indi-

cated she could testify generally that "children who have been abused don't always tell a responsible adult that that has happened immediately when it happens and that that's not unusual." Even so, the judge noted that he was "not totally convinced that that point is not so obvious to the ordinary person in this day and age that it really requires expert testimony."

Alberts-Plumer testified that she had treated many sexually abused children, that she had extensive training, and that she was familiar with the research in the area of sexual abuse and children. She also testified that she was trained in the "Finding Words" method of forensic interviewing of sexually abused children and she had trained with one of the nation's leading experts in the field of sexual abuse and children. On the basis of this testimony, she was qualified as an expert and allowed to testify that a large percentage of children who have been sexually abused do not report that fact immediately and that when they do report they are not always focused on the same details that would be important to an adult investigating the abuse. She further testified the details of the sexual abuse may come out over a period of time rather than all at once. Reyna preserved the issue by raising an objection to the testimony at trial.

On cross-examination, counsel for Reyna was able to explore the role of susceptibility to suggestion in the reports of child sexual abuse victims. She was also able to elicit testimony that improper questioning could lead to distorted or even false reports.

Reyna complains that the testimony did not meet the prerequisites required for its admission into evidence because there was no showing of necessity or that the subject matter was not within the knowledge of an average juror. He points to the trial judge's own statements casting doubt on the need for the testimony and the fact that many of the jurors had worked directly with children as grounds for finding that the statute was erroneously applied. He relies on a line of cases holding that the testimony of an expert must be outside the common knowledge of a juror to be admissible. In particular, he quotes from *State v. Cooperwood*, 282 Kan. 572, 147 P.3d 125 (2006), where this court noted that it had stated the

standard for admission of expert testimony in various ways, including as strongly as:

" 'Expert conclusions or opinions *are inadmissible* where the normal experiences and qualifications of lay persons serving as jurors permit them to draw proper conclusions from given facts and circumstances.' (Emphasis added.) *Pullen v. West*, 278 Kan. 183, 207, 92 P.3d 584 (2004); *State v. McIntosh*, 274 Kan. 939, 956, 58 P.3d 716 (2002); see [citations omitted]; *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423 (1978)." 282 Kan. at 578-79.

Despite "facially different" methods of stating the standard, *Cooperwood* concluded, quoting *Lollis*: " 'It is obvious that these observations simply state, in a different way, that the basis for the admission of expert testimony is necessity, arising out of the particular circumstances of the case.' 224 Kan. at 261." 282 Kan. at 579.

Reyna's theory of the case was to attack the credibility of the complaining witnesses, implying that the events reported could not have occurred as reported, that the victims were subjected to poor interviewing techniques which suggested the answers the adults were looking for, and that the delay and inconsistency in their stories indicated that the allegations were not true. Because of that strategy, Reyna complains that the testimony of Alberts-Plumer amounted to an expert opinion vouching for the credibility of the victims and, therefore, was highly prejudicial.

In *State v. McIntosh*, 274 Kan. 939, 958-60, 58 P.3d 716 (2002), this court held that qualified expert witness testimony on common patterns of behavior of sexually abused children was admissible to establish that the victim in the case exhibited behavior consistent with sexually abused children. *McIntosh*, in turn, relied heavily upon *State v. Reser*, 244 Kan. 306, 310-15, 767 P.2d 1277 (1989), in which this court undertook an exhaustive review of cases from both Kansas and other jurisdictions that had considered expert testimony on the behavioral characteristics of child sexual abuse victims.

*McIntosh* and *Reser* both concluded that testimony from a qualified expert concerning the characteristic behaviors of child victims of sexual abuse, including such things as failure to report the abuse immediately, was proper and helpful to the jury and could be in-

troduced to corroborate victim testimony. They also concluded that it was permissible for the expert to testify that, having examined the victim, the expert concluded that the victim has symptoms consistent with a child who had been sexually abused. *McIntosh*, 274 Kan. at 956; *Reser*, 244 Kan. at 315.

In this case, Alberts-Plumer did not present evidence that she had examined the victims or that they had symptoms consistent with sexual abuse, both of which, contrary to the trial court's ruling, would have been permissible. Her testimony was limited to generalizations, subject to cross-examination, concerning typical behaviors of sexual abuse victims.

The Court of Appeals recently considered a similar set of facts in *State v. Gaona*, 41 Kan. App. 2d 1064, 208 P.3d 308 (2009). In that case, the State sought to introduce the testimony of Kelly Robbins. Although Robbins was "not a psychiatrist, psychologist, social worker, mental health technician, or family therapist, she had specific training in child interview techniques and a wealth of experience in the investigation of child sexual abuse." 41 Kan. App.2d at 1067. Her qualifications were more consistent with her background as a special agent for the Kansas Bureau of Investigation than with a mental health care provider or therapist. The court specifically noted that "Robbins was not asked to provide a medical diagnosis or to relate it to this specific victim, but rather was confined to a general discussion of common behavioral traits of sexually abused children." 41 Kan. App. 2d at 1068. The court found it was not an abuse of discretion to allow Robbins to testify on such a limited basis. 41 Kan. App. 2d 1068-69.

K.S.A. 60-456(c) provides with regard to expert testimony that "[u]nless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission." Despite the trial judge's questioning of the need for admission of expert testimony in this case, case law supports the conclusion that the testimony of general behavioral traits of sexual abuse victims is helpful to the jury and, therefore, admissible. Moreover, Reyna was able to take advantage of cross-examination of the witness to bolster his own theory of the case. Under these circumstances, it

is difficult to conclude that the trial court abused its discretion in admitting the testimony, and we find it did not.

## VOIR DIRE

Reyna contends that the trial judge unreasonably limited his voir dire of the jury panel. K.S.A. 22-3408(3) governs the conduct of voir dire and provides:

> "The prosecuting attorney and the defendant or his attorney shall conduct the examination of prospective jurors. The court may conduct an additional examination. The court may limit the examination by the defendant, his attorney or the prosecuting attorney if the court believes such examination to be harassment, is causing unnecessary delay or serves no useful purpose."

With respect to the standard of review on appeal, we have said:

> "The 'purpose of voir dire examination is to enable the parties to select jurors who are competent and without bias, prejudice, or partiality.' *State v. Manning*, 270 Kan. 674, 691, 19 P.3d 84 (2001). Generally the nature and scope of the voir dire examination is entrusted to the sound discretion of the trial court. *Manning*, 270 Kan. at 691. However, ' "[i]n determining whether the trial court has taken sufficient measures to assure that the accused is tried by an impartial jury free from outside influences, appellate tribunals have the duty to make an independent evaluation of the circumstances." ' *State v. Aikins*, 261 Kan. 346, 366, 932 P.2d 408 (1997)." *State v. Hayden*, 281 Kan. 112, 128-29, 130 P.3d 24 (2006).

In order to consider Reyna's argument, it is necessary to piece together several segments of the trial. The State questioned the jury panel at length before passing the panel for cause. Counsel for Reyna began her voir dire by saying, "[T]he good news is the State has asked a lot of questions that I would have so chances are my portion of the voir dire, which this process is called, won't take quite so long." Reyna's counsel then immediately began asking questions of individual jurors. She had questioned three jurors individually when the court called counsel to the bench and the off-the-record discussion was held. Following the discussion, counsel resumed questioning jurors individually. In all, after the discussion at the bench, counsel questioned another 20 jurors individually. She asked only five questions generally of the panel, and one of those resulted in individual discussions with three additional jurors before she passed the panel for cause.

Peremptory strikes were conducted in chambers. Following that process, Reyna's counsel stated:

"Judge, I would just ask that when the Court calls counsel up to the bench, that the Court tries not to scowl or make any kind of—and I'm stating this is because what happened *[sic]* I got called up to the bench in voir dire and I will tell the Court that I cut my voir dire back because I felt like if I was admonished again it was going to have a negative impact on Mr. Reyna, resulting in not being able to ask many questions of jurors that said nothing."

The trial judge responded, "Well, that's noted for the record. It's without any basis."

Counsel for Reyna filed a motion for new trial in which she alleged that the State's voir dire consumed close to 1 and 1/2 hours but the defense was not given an opportunity to sufficiently voir dire the panel. She alleged that in the discussion at the bench, the trial court "told defense counsel that she would not be permitted to do an individual voir dire, that the questions that were being asked were not germane and to move on as there wasn't time for this." At argument on the motion, counsel again stated that the court had admonished her that her voir dire questions were not germane, that it had limited her opportunity to question the potential jurors and, in particular, she had been limited from delving into their education and the degrees some of them were seeking, which in turn hampered her ability to select a jury that did not have preconceived notions.

In ruling on the motion, the district judge characterized the off-the-record conversation this way:

"The selection of the jury. In all due respect I think I made one comment to counsel out of hearing of the jury that I questioned whether it was germane to ask each of the very young witnesses or potential jurors who said they were in school or going to school what their major in college was or was going to be. Anybody that's been a parent and had children go through college knows that statistics that the major change *[sic]* an average of four to five times from when they start out and what they end up. That was the only comment I recall making and I believe that defense counsel had certainly adequate opportunity to—to question and voir dire. And once again, all due respect, Ms. McKenna, you've never been timid or reluctant to challenge my ruling in various trials by—by pushing those limits and asking your questions subject to further admonition. So I believe that the jury was fairly questioned by both sides and was fairly selected in this case."

The motion for new trial was denied.

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Ransom*, 289 Kan. 373, 389, 212 P.3d 203 (2009); *State v. Hayes*, 258 Kan. 629, 631-32, 908 P.2d 597 (1995).

Putting together the various segments of the trial at which the voir dire was conducted and discussed, we cannot conclude that Reyna's counsel was limited in her questioning of the jury panel in any meaningful way. Following the discussion at the bench, counsel proceeded to question 20 panel members on an individual basis. Her questioning resulted in the removal of one juror for cause. While she did leave the topic of college majors following the discussion at the bench, the trial court's assessment of that topic hardly seems an abuse of discretion. We pause to note that it was Reyna's burden to produce an adequate record on this issue and a request to put the conversation at the bench on the record would have assisted in our review. See *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009). That said, we also note that it is not a common practice for a trial judge to interrupt *sua sponte* voir dire, and our review of the record indicates no reason it should have been interrupted here. However, our independent evaluation of the circumstances does not indicate prejudice to Reyna.

## CONSTITUTIONALITY OF SENTENCE

Reyna next argues that the hard 25 life sentence imposed upon him under K.S.A. 2006 Supp. 21-4643(a)(C) and (c) (Jessica's Law) violates both the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights in that it is cruel and unusual and disproportionate to the offense. He concedes, however, that he failed to raise the constitutional issue in any form before the trial court.

This court has recently considered the same argument in several cases all of which came to us in substantially the same procedural

posture. See *State v. Oehlert*, 290 Kan. 189, 224 P.3d 561 (2010); *State v. Robison*, 290 Kan. 51, 220 P.3d 500 (2010); *State v. Mondragon*, 289 Kan. 1158, 220 P.3d 369 (2009); *State v. Spotts*, 288 Kan. 650, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, 199 P.3d 1265 (2009); *State v. Ortega-Cadelan*, 287 Kan. 157, 194 P.3d 1195 (2008). *Cf. Seward*, 289 Kan. 715. Little would be gained by repeating what has been repeatedly set out in those cases. This constitutional argument is both a factual and a legal issue, and Reyna's failure to raise the issue below and create a factual record sufficient for this court's review precludes our review. Reyna's argument that his case was tried to a jury, unlike the other cases in which the defendant entered a plea, and so fact finding has been completed by the jury, does not address the need for particularized findings of fact addressed to the considerations set out in *State v. Freeman*, 223 Kan. 362, Syl. ¶¶ 1-2, 574 P.2d 950 (1978), on which the constitutional argument turns. The issue is not properly before us.

## DEPARTURE MOTIONS

Reyna filed a motion and an amended motion for dispositional and durational departure. The motions sought departure from both the off-grid sentences and the guidelines sentences applicable to his convictions. The motions were considered and denied by the district court. He alleges there were substantial and compelling reasons to grant the motions, see K.S.A. 2006 Supp. 21-4643(d), and, therefore, the trial court erred in imposing the concurrent hard 25 life sentences.

"Our standard of review on the denial of a sentencing departure is abuse of discretion. Judicial discretion is abused ' " 'when no reasonable person would take the view adopted by the district judge.' " ' *Thomas*, 288 Kan. at 164 (quoting *Ortega-Cadelan*, 287 Kan. at 165)." *Seward*, 289 Kan. at 721.

Reyna argues that the degree of harm to his victims was less than in the typical sex offense case, that a sex offender evaluation found no evidence of pedophilia, and that the evaluator did not consider him to be a threat to the community if he was properly supervised, combined with his lack of criminal history, all lead to the conclusion that the trial court should have granted his departure motions. The

trial judge in considering the motions noted the strong legislative intent behind the sentencing statute, as well as the difficulty of quantifying the "typical" harm in a case such as this. He also noted that Reyna was not eligible for sex offender treatment as he maintained his innocence of the offense. On the other hand, the evaluations did indicate Reyna has an alcohol problem. The judge's stated reasons for denying any departure were extensive and indicated that he thoroughly considered the factors argued. In *Seward*, we said:

"This court has defined 'substantial' as 'something that is real, not imagined; something with substance and not ephemeral,' while the term ' "compelling" implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary.' *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

"In ruling on Seward's departure motion, the district judge orally reviewed the mitigating and aggravating factors advanced by Seward and the State, engaging in an appropriate weighing of the competing considerations. The defense has demonstrated no abuse of discretion in the district judge's denial of its departure motion." 289 Kan. at 722.

Such is the case here. Reyna's convictions and the concurrent hard 25 life sentences imposed are affirmed.

Affirmed.

\* \* \*

JOHNSON, J., dissenting: I respectfully disagree with the majority's decision to affirm Reyna's sentence for the off-grid version of aggravated indecent liberties with a child under K.S.A. 2006 Supp. 21-3504. I believe Reyna should have been sentenced for the crime with which he was charged and of which he was convicted by the jury, *i.e.*, the severity level 3 version of the offense.

First, I believe the majority may have missed the point of appellant's argument about the charging document when it declares that "Reyna failed to file a motion for arrest of judgment," and then proceeds to apply the defective complaint test from *State v. Hall*, 246 Kan. 728, 765, 793 P.2d 737 (1990), *overruled in part on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003). *Reyna*, 290 Kan. at 677. The statute governing a motion for arrest of judgment provides: "The court on motion of a defendant shall arrest judgment if the complaint, information or indictment does

not charge a crime or if the court was without jurisdiction of the crime charged." K.S.A. 22-3502. Reyna made it explicitly clear in his brief that he is not claiming that his complaint was defective and that he does not believe that *Hall* is applicable. To the contrary, Reyna asserts that the complaint against him is absolutely valid in charging the crime of severity level 3 aggravated indecent liberties with a child and that the district court was definitely invested with jurisdiction of that charged crime. In other words, the complaint in this case did not fall within the parameters of K.S.A. 22-3502, and the district court could not have granted relief under the plain language of that statute because the complaint *did* charge a crime and the court *did* have jurisdiction of the crime charged. I understand that *Hall* may have purported to change that plain statutory language, but the statute says what it says.

Reyna's principal complaint is that he was *sentenced* for a different and more severe crime than the one which was charged in the valid complaint and of which he was convicted. To clarify his point, Reyna likened his circumstance to a person who was validly charged with and convicted of intentional second-degree murder but was then sentenced for premeditated first-degree murder. In that instance, the error would occur at sentencing.

The majority does not explain the logistics of using a motion to arrest judgment to correct a sentencing error. Normally, a sentence will be imposed well after the deadline for filing a motion to arrest judgment, which is 10 days after the guilty verdict. K.S.A. 22-3502. I would not require a defendant to be prescient or so cautious as to file a prophylactic motion to arrest judgment simply to guard against the possibility that the district court might impose an improper sentence. In short, I do not believe that a motion to arrest judgment was a prerequisite in this instance or that *Hall* is applicable.

Next, I disagree that the jury instructions in this case were erroneous. They set forth each and every element of severity level 3 aggravated indecent liberties with a child. For that crime, which was charged in the complaint, there was no omitted element, as was the case in *State v. Daniels*, 278 Kan. 53, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004), upon which the majority relies. If the

district court had sentenced Reyna for a severity level 3 felony, there would be no talk of a defective complaint or erroneous jury instructions.

The problem here is that, after the verdict, the State declares that it intended to prosecute Reyna for the off-grid version of the offense and, therefore, it should get the more severe sentence that it wanted. Granted, the complaint does identify the severity level as an off-grid felony, which would tend to corroborate the State's intention to charge the more severe crime. However, we have not previously permitted charging by implication.

"We have held that the citation to the statute cannot substitute to supply a missing element of the charge. Incorporation by reference cannot be implied or inferred. It must be explicit. [Citation omitted.] A proper instruction does not remedy the defect in the complaint. [Citation omitted.]" *State v. Sanford*, 250 Kan. 592, 601, 830 P.2d 14 (1992).

Again, the error was in sentencing Reyna for a different, and more severe, crime than that with which he had been charged and convicted. As the majority notes, a Sixth Amendment violation occurred under *Blakely v. Washington*, 542 U.S. 296, 303, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), because Reyna's sentence exceeded the statutory maximum sentence permitted " 'solely on the basis of the facts reflected in the jury verdict.' " *Reyna*, 290 Kan. at 680-81. The strong message conveyed by *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and its progeny has been that judicial factfinding impermissibly usurps the province of the jury, in contravention of a defendant's right to jury trial.

However, subsequently, in *Washington v. Recuenco*, 548 U.S. 212, 218, 165 L. Ed. 2d 466, 126 S. Ct. 2546 (2006), the United States Supreme Court declared that a *Blakely* error—failing to submit a sentencing factor to the jury—is not structural error and, therefore, could be subject to a harmless error analysis. *Recuenco* relied heavily upon the Court's prior decision in *Neder v. United States*, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999), which found that the failure to submit to the jury an element of the crime was not structural error, but rather the error could be .harmless. The test for harmlessness was stated as whether "the omitted el-

ement was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." 527 U.S. at 17.

Ironically, under the guise of harmless error, a constitutional error of trial court factfinding may be cured by performing appellate court factfinding. A reviewing court cannot declare that the jury *would* have found the omitted element or sentencing enhancement factor without doing what we often say that an appellate court cannot do—make factual findings by reweighing the evidence and passing on the credibility of witnesses. See *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009). The very term "overwhelming evidence" suggests a weighing of the evidence in the record that favors the fact in issue. Further, a fact which may have been uncontested is not necessarily credible. For instance, if an 80-year-old rape victim testifies that she was 8 years old at the time of the rape and the complaint does not charge the defendant with raping a victim under the age of 14, there would have been no incentive for the defense to challenge the age testimony because it was both obviously incredible to the jury and irrelevant to the charges being prosecuted. Yet, if the district court sentences the defendant under Jessica's Law, see K.S.A. 2006 Supp. 21-4643, we would be compelled to affirm the conviction and sentence because, in the words of *Daniels*, the age element was "essentially uncontested and, as a result, overwhelming." 278 Kan. at 63.

Recently, United States Supreme Court Justice Stevens observed that "imposing criminal sanctions for nonproscribed conduct has always been considered a hallmark of tyranny—no matter how morally reprehensible the prosecuted party." *United States v. Marcus*, 560 U.S. 258, ___, 130 S.Ct 2159, 176 L. Ed. 2d 1012 (2010) (Stevens, J., dissenting). I would submit that imposing an additional criminal sanction for an uncharged crime of which the defendant was not convicted is no less tyrannical.

Nevertheless, *Recuenco* and *Neder* are binding precedent with regard to the character of a Sixth Amendment violation as not being structural error. However, *Recuenco* clarified that its holding did not foreclose the possibility "that, as a matter of *state* law, the *Blakely* . . . error was not harmless." 548 U.S. at 218 n.1. Therefore,

I would find that under the law of this state, the sentencing error in this case was not harmless.

To start, "[i]n Kansas, all crimes are statutory." *Sanford*, 250 Kan. at 601. K.S.A. 2006 Supp. 21-3107(2), instructs us that "[u]pon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both." Here, the off-grid offense was not the crime charged and was not a lesser included crime of the charged severity level 3 offense. Accordingly, Reyna's conviction for the uncharged off-grid offense was statutorily prohibited.

Moreover, we have declared that a district court does not have *jurisdiction* to convict of an uncharged crime. " '[I]f a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict a defendant of the crime, *regardless of the evidence presented.*' " (Emphasis added.) *State v. Belcher*, 269 Kan. 2, 8, 4 P.3d 1137 (2000) (quoting *State v. Horn*, 20 Kan. App. 2d 689, Syl. ¶ 1, 892 P.2d 513, *rev. denied* 257 Kan. 1094 [1995]). It seems nonsensical to permit the district court to acquire jurisdiction to convict a person of an uncharged crime after the trial has concluded based upon a failure to file a motion to arrest judgment within 10 days after the verdict. Essentially, that creates retroactive jurisdiction via an implicit postconviction waiver. See *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009) ("Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel; a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction."). If, as I contend, the district court lacked jurisdiction to convict Reyna of the off-grid offense, this court cannot acquire jurisdiction for the purpose of reviewing the evidence to determine whether the error was harmless. See *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004) (if district court lacks jurisdiction, appellate court does not acquire jurisdiction over subject matter on appeal).

On a different level, we have held that a sentence which does not conform to the term of imprisonment authorized by the statute is an illegal sentence. See *State v. Davis*, 283 Kan. 767, 769, 156

P.3d 665 (2007). An illegal sentence may be corrected "at any time." K.S.A. 22-3504(1). Based upon the elements charged in the complaint and the elements found by the jury, Reyna's sentence does not conform to the prison term authorized by the aggravated indecent liberties with a child statute. Such an "any time" correction cannot be subject to harmless error.

Finally, we have a court-created rule in this state known as the identical offense sentencing doctrine. Recently, in *State v. Thompson*, 287 Kan. 238, 258, 200 P.3d 22 (2009), we reiterated that "[i]f the elements in overlapping provisions are identical, the due process considerations involved in Kansas' identical offense sentencing doctrine apply and a defendant may only be sentenced to the lesser punishment provided for in the identical, overlapping provisions." Here, Reyna was actually charged with and convicted of a lesser included offense of the crime for which he was sentenced. See K.S.A. 2006 Supp. 21-3107(2)(b) (lesser included crime is one where all elements of the lesser crime are identical to some of the elements of the crime charged). I find it inconsistent and illogical to heed the due process considerations in the context of an identical offense, but to ignore the same due process concerns when the defendant is sentenced for an aggravated degree of a crime after being charged with and convicted of a lesser degree of that offense. To me, the latter scenario provides less notice and opportunity to be heard than the identical offense situation, and I would not condone it in this state.

Accordingly, I would find that Reyna was erroneously sentenced pursuant to Jessica's Law and that the error was not harmless under Kansas state law.