NOT DESIGNATED FOR PUBLICATION

No. 121,221

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA JOHN SCHMEAL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed July 10, 2020.
Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Ashley R. Iverson*, assistant county attorney, *Barry R. Wilkerson*, county attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: Joshua John Schmeal appeals from his sentence after pleading no
contest to one count of aggravated indecent liberties with a child. In exchange for the
plea, the State agreed to recommend a durational departure to 80% of the low number in
the grid box. Before sentencing, Schmeal moved to withdraw his plea, asserting his
counsel at the time failed to provide copies of the discovery, preventing Schmeal from
making a fully informed decision or understanding the consequences of entering the plea.
After the district court denied the motion, Schmeal moved for a dispositional departure,
but the court ultimately sentenced him in accordance with the plea agreement by granting

1

a durational departure to 71 months and imposing lifetime postrelease supervision. For the reasons stated below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

After an incident in July 2017 in which Schmeal allegedly had sexual intercourse with a G.M., a 15-year-old girl, the State charged him with one count of aggravated indecent liberties with a child, a severity level 3 person felony, and one count of indecent liberties with a child, a severity level 5 person felony. See K.S.A. 2017 Supp. 21-5506(a)(1), (b)(1), (c)(1)-(2).

Schmeal agreed to enter a no contest plea on October 1, 2018, to the aggravated indecent liberties with a child charge and the State would dismiss the remaining charge. The State also agreed to recommend a durational departure that would reduce the total sentence to "80% of the low number in the presumed sentencing grid box" because Schmeal had accepted responsibility for the offense. Under the plea agreement, Schmeal was free to request a further durational departure or a dispositional departure to probation. Along with the plea agreement, Schmeal filed a signed acknowledgement of rights and entry of plea form that stated he was 21 years old.

At a plea hearing that day, Schmeal advised the district court he had read and signed the documents comprising the written plea agreement after discussing it with his appointed counsel, Seth Brackman. When asked if anyone had made threats or promises to get him to sign the agreement, Schmeal said, "Nope." When asked if he signed the agreement freely and voluntarily, Schmeal said, "Yup." After the court recited the charge Schmeal would be pleading to, Schmeal first said, "Not guilty," but quickly corrected himself and said, "No, no contest." The State then recited the following factual basis, "Your Honor, on July 25th, 2017, the victim, [G.M.], was 15 years old. On that July 25th date the defendant was 20 years old. They met at Fancy Creek State Park here in Riley

2

County, Kansas, and engaged in sexual intercourse." The district court found Schmeal knowingly, voluntarily, and intelligently entered the plea and accepted the no contest plea.

*Motion to withdraw plea proceedings*

A month later, Brackman moved to withdraw as counsel based on an apparent conflict with Schmeal. At the hearing on the motion, Brackman explained that Schmeal wished to withdraw his plea based on Brackman's representation. The district court granted the motion and later appointed Lora Ingels as defense counsel.

After sentencing was continued twice, Schmeal moved to withdraw his plea on January 30, 2019. In the motion he asserted good cause existed to withdraw the plea because he believed new evidence established an alibi for the offense. He also asserted Brackman misled him by not allowing adequate time to review the discovery which hindered his decision whether to accept the plea. The district court held a hearing on the motion on March 11, 2019.

*Schmeal's testimony*

Schmeal testified that Brackman met with him "as many times as [he had] court dates," and then at the jail "maybe only once to view my discovery for like 45 minutes." Schmeal requested copies of the discovery "[m]any times" but Brackman advised he could not give it to him. Schmeal testified that on one occasion, Blackman "literally just gave [Schmeal] a packet and said here you go. 45 minutes later [Brackman] said he had to meet another client, and [Schmeal] went back to [his] cell."

Schmeal testified that Brackman came to him with the plea agreement about four or five days before the trial and told Schmeal "'here's the plea agreement, this is the best

3

thing you're gonna get, and that you might as well take it or you're looking at a really long time in prison.'" Schmeal had never asked Brackman to negotiate a plea agreement because he wanted to go to trial, but he and Brackman disagreed about which path to take. They spent "10, maybe 15 minutes" discussing the plea agreement before Schmeal signed it, but Schmeal felt like he did not really have a choice in entering the plea. Schmeal was not fully able to see all of the discovery until the court appointed Ingels, at which time he realized he possibly had an alibi defense. Schmeal had these concerns at the plea hearing but did not voice them to the court because "[he] just thought that if [he] just listened to [his] lawyer that all would be good."

On cross-examination, Schmeal testified the main dispute was that he wanted to argue G.M. consented even though Brackman advised him that did not matter because of her age. Schmeal said he thought he had a potential alibi because he was at work the day of the alleged offense. The State reminded him that the alleged crime occurred at night.

Schmeal told the district court he remembered being asked several questions at the plea hearing but did not recall his answers. After the court read back the transcript from that hearing, Schmeal agreed he said "'yes'" to every question. The court asked if he was lying at the time, to which Schmeal responded "Yes, I did." Schmeal remembered Brackman going through the plea agreement with him but never actually read it before signing the agreement.

*Brackman's testimony*

Brackman's first meeting with Schmeal at the jail lasted "well over an hour," during which time Brackman went through his standard practice of explaining "the entire process" by "go[ing] through the procedure, . . . through the charges, what those mean, and what the State has to prove, and then we go to the potential sentences." Brackman testified plea negotiations began before the preliminary hearing based on email

4

communications from May 2018. The State's original plea offer was for Schmeal to plead to Count 1, dismiss Count 2, and receive a durational departure of 15 percent. Brackman could not recall ever having a short conversation with Schmeal. After ongoing negotiations, Schmeal agreed to waive his right to a preliminary hearing and ultimately Schmeal and the State reached the final plea agreement.

Brackman also said he disagreed with Schmeal's testimony about how many times they had met because he had met with him "at least the week before [the plea hearing] because we didn't even set the plea date until after I had the signed plea agreement." Brackman went over the written plea agreement with Schmeal per his standard practice by presenting the type-written agreement with nearly everything already filled out and "walk[ing] through page one through four and [going] through every single paragraph starting with the very top."

As to Schmeal's testimony about lack of access to discovery, Brackman testified he informed Schmeal there was not an obligation to "give him a physical copy, but every single time I told him I have an open file policy." Brackman stated that "as a general practice" he did not hand over discovery in sex cases "due to the sensitive nature of those crimes" but he "would always give [defendants] as much time as they wanted." Brackman said he talked with Schmeal about his video confession often but Schmeal did not want to view the video. They were able to talk "significantly" about the video because Schmeal "had a great memory as to what occurred, as to his conversations with the detectives, and he walked through and was able to go through the incidents as alleged by the officers and the victim."

Brackman testified that he remembered discussing whether the incident with G.M. was consensual, but he explained to Schmeal that the victim's age removed that as a potential defense. Brackman counseled Schmeal that bringing up consent at the plea hearing may lead to the district court not accepting his plea, and that Schmeal

"[b]egrudgingly" chose to enter the plea. Brackman stated Schmeal was not misled. Brackman did not recall ever discussing an alibi with Schmeal.

On cross-examination, Brackman testified that on one occasion he sat with Schmeal in the library at the jail for about an hour and fifteen minutes. Schmeal had more than one opportunity to review the discovery and Brackman would allow him to review the evidence for as long as he wanted. Brackman never had to cut the time short.

After hearing the testimony and the parties' closing arguments, the district court denied Schmeal's request to withdraw his plea agreement. The court found that Brackman was "clearly competent counsel," based partly on the lack of any allegations to the contrary. The court also did not believe any evidence showed Schmeal was misled or coerced into entering the plea agreement. Finally, the court noted Schmeal's answers and demeanor at the plea hearing showed the plea was made fairly and understandingly. Ingels then asked to set a hearing for sentencing, saying she would be filing a motion for departure on Schmeal's behalf.

*Motion for departure and sentencing*

On March 28, 2019, Schmeal moved for a departure, requesting a downward dispositional departure sentence or, alternatively, a downward durational and dispositional departure sentence. The motion asserted several substantial and compelling reasons existed to warrant departure, including: a psychological evaluation showed Schmeal did not meet the criteria for a pedophile or sexual predator and was not a danger to the community, Schmeal's willingness and ability to complete sex offender treatment therapy, the victim was a willing participant, Schmeal had a supportive family, and the State agreed to recommend a reduced sentence.

The State responded in a written motion a week later, agreeing that Schmeal's acceptance of responsibility evidenced by his entering a plea warranted the durational departure in the plea agreement because the victim would no longer need to testify. The State opposed any further departures, asserting Schmeal showed no remorse for his actions, had a previous conviction for a sexually violent crime, that Schmeal's actions contradicted the psychological evaluation's conclusions that he was not a danger to the community or acted impulsively, and that the underage victim's participation "is not a departure factor" because "[s]he lacked the ability to consent."

The district court held a sentencing hearing on April 8, 2019, first finding Schmeal's criminal history score to be a D with no objections. Schmeal's counsel reiterated the arguments in the departure motion, asking the court to follow the plea agreement "at a minimum" but also requested a dispositional departure or to reduce his sentence to a period of 40 months. The State asked the court to follow the plea agreement and reasserted the arguments in its motion, stressing that this was Schmeal's second conviction for a sexually violent offense and that the underage victim's consent was not a departure factor.

Ultimately, the court denied most of the departure request, finding it did not believe substantial and compelling reasons existed to warrant a dispositional departure. The court specifically stated, "As it relates to your request for a dispositional departure, the Court does not believe that there [have] been compelling reasons either in the facts of the case, or in your motion, or in Dr. Barnett's report to justify a dispositional departure; therefore, it will be denied." In turn, the court followed the plea agreement by imposing a 71-month prison sentence and a lifetime postrelease supervision term.

Schmeal timely appealed.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT DENIED SCHMEAL'S MOTION TO WITHDRAW HIS PLEA?

Schmeal argues the district court erred by refusing to let him withdraw his plea before sentencing. He contends his counsel provided lackluster performance by failing to allow him to review discovery, thus preventing Schmeal from making informed decisions about his case or fully understanding the consequences of entering the plea.

Before sentencing, a district court may permit a defendant to withdraw his or her guilty or no contest plea "for good cause shown and within the discretion of the court." K.S.A. 2019 Supp. 22-3210(d)(1). Schmeal bears the burden of establishing good cause and to show that the court abused its discretion in denying the motion. See *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). In reviewing for an abuse of discretion, this court will not reweigh evidence or reassess witness credibility. *State v. Edwards*, 309 Kan. 830, 836, 440 P.3d 557 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

As both parties note, Kansas appellate courts will consider three factors—often called the *Edgar* factors—when considering whether a defendant has shown the requisite good cause to withdraw a plea prior to sentencing:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors establish "'viable benchmarks'" for the district court when exercising its discretion and should not be applied mechanically or to the exclusion of other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

8

*First* Edgar *factor*

Under the first *Edgar* factor the level of competence a defendant must show differs based on the timing of the motion to withdraw plea. See *State v. Watie*, No. 119,067, 2019 WL 6794881, at *5 (Kan. App. 2019) (unpublished opinion) (noting courts use the same *Edgar* factors to evaluate both pre- and postsentencing motions to withdraw plea but apply a heightened standard on the competence factor), *petition for rev. filed* January 13, 2020. When a defendant moves to withdraw their plea before being sentenced, the defendant must show the representation amounts to "lackluster advocacy," a less demanding standard than the level of incompetence required to violate the Sixth Amendment right to counsel. See *Schaefer*, 305 Kan. at 589. The Kansas Supreme Court has not expressly defined what conduct qualifies as lackluster advocacy, but it would presumably be easier to prove than the manifest injustice standard required to support a postsentencing motion to withdraw a plea.

Schmeal asserts Brackman's representation was lackluster because he violated Schmeal's statutory right to receive copies of discovery, as discussed in *State v. Marks*, 297 Kan. 131, 148, 298 P.3d 1102 (2013). Schmeal's argument that the district court committed legal error in this respect is unpersuasive.

In *Marks*, the Kansas Supreme Court held "K.S.A. 22-3212 and K.S.A. 22-3213 unambiguously require disclosure [of copies of discovery and witness statements] *to the defendant*." (Emphasis added.) 297 Kan. at 148. The *Marks* court paid particular attention to the language in those statutes identifying "the defendant" as the party entitled to review discovery, noting "[n]either K.S.A. 22-3212 nor K.S.A. 22-3213 leave room for interpretation as to who 'the defendant' is because the meaning can be readily ascertained by the plain language—the defendant is the person who is charged with the crime." 297 Kan. at 147. Yet despite the statutory error, the *Marks* court ultimately held that "[a] defendant's right to assistance in his or her defense does not translate to a constitutional

9

right to personal copies of discovery, *particularly when that discovery was already provided to his or her attorney*. [Citations omitted.]" (Emphasis added.) 297 Kan. at 149.

The current version of the statute last amended in 2014 substitutes "defendant" in nearly all instances with "defense." L. 2014, ch. 34, § 1, eff. July 1, 2014. Under language of the current version of the statutes, the State was only required to provide *the defense* with copies of discovery and Schmeal readily admits that his counsel had access to discovery. As a result, Schmeal has not shown any legal error resulted from any violation of either K.S.A. 2017 Supp. 22-3212 or K.S.A. 2017 Supp. 22-3213.

The discovery statutes cited by Schmeal—K.S.A. 2017 Supp. 22-3212 and K.S.A. 2017 Supp. 22-3213—only govern mandatory disclosure of discovery *by the State* after a defense request. At no point in his brief does Schmeal identify any discovery requests that the State ignored. Schmeal's only claim of error seems to be that Brackman failed to provide copies of the discovery to him. Schmeal provides no authority that required Brackman to do so.

In all events, Schmeal fails to overcome the constitutional harmlessness test used in *Marks*. Just as in those cases, Schmeal had no constitutional right to personal copies of discovery, "particularly when that discovery was already provided to his or her attorney." *Marks*, 297 Kan. at 149.

Schmeal also contends his testimony that Brackman never provided him with copies of the discovery was "uncontroverted," thus establishing lackluster advocacy and good cause to withdraw the plea. Brackman's testimony admittedly does show that Schmeal never received his own physical copies of the discovery documents, but as Brackman also testified, he had an "open file policy" that allowed Schmeal to review the discovery for "as much time as [he] wanted." Despite Schmeal's testimony that he only got to review discovery at one meeting for 45 minutes, Brackman testified that particular

10

meeting lasted "closer to an hour and 15 [minutes]" and that Schmeal had multiple other opportunities to review the discovery.

When rendering its decision, the district court specifically found on the first *Edgar* factor that Brackman "was clearly competent counsel." This finding suggests the court found Brackman's testimony about Schmeal's access to discovery to be more credible. This court does not reweigh evidence or make witness credibility determinations. See *Edwards*, 309 Kan. at 836. Simply put, beyond disagreeing with the district court's conclusion, Schmeal offers no persuasive argument suggesting the district court abused its discretion by concluding Brackman provided competent representation.

*Second and third* Edgar *factors*

As for the remaining *Edgar* factors, Schmeal argues that lack of access to discovery coerced him into making a plea that was not fairly and understandingly made. There is no evidence Brackman failed to comply with any statute or other law requiring disclosure of discovery to Schmeal and the record shows Brackman confirmed Schmeal had ample access to discovery. Beyond conclusory assertions and referencing his own self-serving testimony, Schmeal provides nothing that would establish error in the district court's conclusions relating to his decision to enter the plea.

Schmeal also briefly asserts that his testimony shows he did not have enough time to review the plea agreement to fully understand it and that he did not realize he was giving up potentially valid defenses by entering the plea. As with his other assertions, the record refutes both claims. Brackman testified at the hearing on Schmeal's motion to withdraw plea that plea negotiations began early in the case and Schmeal actively participated in the negotiation process. There is no evidence of any valid defense that Schmeal gave up. Brackman testified he reviewed every aspect of the written agreement with Schmeal before he signed it.

11

Brackman and Schmeal both testified the only defense they disagreed on involved G.M.'s supposed consent, which Brackman continually advised Schmeal was irrelevant since she was a minor. As for a potential alibi defense, after Brackman was replaced as counsel and Schmeal claims he was finally able to review the discovery, Schmeal said he realized he was at work on the day of the alleged incident. As the State pointed out—and Schmeal acknowledged immediately thereafter—the alleged incident occurred at night.

Schmeal simply fails to provide a persuasive argument on appeal that the district court abused its discretion in concluding there was not good cause to withdraw his plea.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING A MOTION FOR A DISPOSITIONAL DEPARTURE?

Schmeal next argues the district court abused its discretion in declining to grant his request for a dispositional departure. He asserts it was unreasonable for the court to deny his request for probation since he presented several substantial and compelling reasons warranted a departure.

*Jurisdiction*

The State contends this court lacks jurisdiction to consider Schmeal's claim because his sentence was within the presumptive guidelines sentence. See K.S.A. 2017 Supp. 21-6820(c)(1). Whether jurisdiction exists is a question of law over which appellate courts exercise unlimited review. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

The revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2017 Supp. 21-6801 et seq., defines a defendant's right to appeal from his or her sentence. Any departure sentence is appealable by the defendant or the State. K.S.A. 2017 Supp. 21-6820(a).

12

However, "the appellate court shall not review: (1) [a]ny sentence that is within the presumptive sentence for the crime." K.S.A. 2017 Supp. 21-6820(c)(1). The KSGA defines "'presumptive sentence'" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the offender's current crime of conviction and the offender's criminal history." K.S.A. 2017 Supp. 21-6803(q). K.S.A. 2017 Supp. 21-6820(c)(2) provides that appellate courts will not review "any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

The State incorrectly asserts that Schmeal received a presumptive sentence. Based on his D criminal history score and the severity level 3 offense, he faced a presumptive prison sentence between 89 and 100 months. See K.S.A. 2017 Supp. 21-6804. The district court sentenced him to only 71 months in prison which is a 20% reduction of the lower grid box number as agreed to by the parties. Although Schmeal received a prison sentence, the total length is clearly a durational departure.

Schmeal correctly points out, the Kansas Supreme Court has considered the issue of whether a denied dispositional departure is appealable when the district court durationally departed under the terms of a plea agreement. See *State v. Looney*, 299 Kan. 903, 327 P.3d 425 (2014). In that case, the district court granted a downward durational departure under the plea agreement but denied a dispositional departure request by the defendant. After a panel of this court determined that appellate jurisdiction was lacking, our Supreme Court reversed, holding that "all departure sentences are subject to appeal under K.S.A. 21-4721(a) unless appellate jurisdiction is divested by a more specific provision." 299 Kan. at 909. The Kansas Supreme Court noted that although the parties agreed to a downward durational departure, the defendant's requested dispositional departure was not part of the plea agreement. 299 Kan. at 909. As a result, the court determined it had jurisdiction to consider the defendant's appeal. 299 Kan. at 909-10. But see *State v. Cooper*, 54 Kan. App. 2d 25, 28, 394 P.3d 1194 (2017) (noting that defendant

13

received "the precise sentence he requested" and thus holding that "K.S.A. 2016 Supp. 21-6820[c][2] divests this court of jurisdiction").

The facts here are essentially identical to *Looney*. The parties made no agreement on a dispositional departure other than Schmeal was free to make the request and the State would oppose it. Since the district court denied Schmeal's request for probation but granted the parties' joint request for a durational departure to 71 months' imprisonment, Schmeal received a departure sentence. Although Schmeal's sentence reflected the plea agreement, this court has jurisdiction to review his claim. See *Looney*, 299 Kan. at 908-09.

*Standard of review*

This court reviews a district court's decision to deny a departure motion for an abuse of discretion, "measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history." *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Ingham*, 308 Kan. at 1469. The party asserting the district court abused its discretion bears the burden of showing the abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

*Analysis*

Under K.S.A. 2017 Supp. 21-6815(a), a district court "shall impose the presumptive sentence . . . unless the judge finds substantial and compelling reasons to impose a departure sentence." "Substantial" means something real, not imagined; something with substance, not ephemeral. "Compelling" means that the court is forced,

14

by the facts of the case, to leave the status quo or go what is beyond ordinary. *State v. Reed*, 302 Kan. 227, 250, 352 P.3d 530 (2015).

The Legislature also provided a nonexclusive list of mitigating factors that a court may consider when determining whether substantial and compelling reasons for a departure exist. See K.S.A. 2017 Supp. 21-6815(c)(1). The statutory mitigating factors include whether "the victim was an aggressor or participant in the criminal conduct associated with the crime of conviction." K.S.A. 2017 Supp. 21-6815(c)(1)(A).

In this appeal, Schmeal does not suggest the district court rejected any of his proffered mitigating factors as either factually unsupported or legally meritless. The district court specifically stated it considered all the claims made in Schmeal's motion and the facts of the case. Rather, he contends simply that the district court's decision not to grant a dispositional departure was unreasonable. The record is clear that the court considered Schmeal's claims and chose to depart only durationally.

The State argued at the hearing that Schmeal's prior juvenile conviction for a sexually violent crime contradicted his claims that he was not a sexual predator or a threat to the community, or that the victim's alleged participation was not a factor that could support departure. In its written response, the State had also argued that Schmeal showed no remorse and that his actions or previous conviction did not support the psychological report's conclusion that he acted impulsively.

Schmeal focuses only the mitigating factors he presented. He essentially is asking this court to substitute its own assessment of the record rather than reviewing the district court's decision for an abuse of judicial discretion. A court exercising its discretion to grant a durational departure does not mean a dispositional departure was also warranted. See *State v. Allen*, No. 118,774, 2019 WL 986038, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1063 (September 27, 2019). Simply put, Schmeal fails to

show that no reasonable person could have reached the same conclusion as the district court based on the factors identified by the court.

DID THE DISTRICT COURT ENGAGE IN JUDICIAL
FACT-FINDING TO EXTEND SCHMEAL'S POSTRELEASE SUPERVISION PERIOD?

Schmeal argues for the first time on appeal that the lifetime postrelease supervision portion of his sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Whether a district court violates a defendant's constitutional rights at sentencing as described under *Apprendi* raises a question of law subject to unlimited review. *State v. Dickey*, 301 Kan. 1018, 1036, 350 P.3d 1054 (2015). Schmeal correctly asserts this court can consider these claims for the first time on appeal because they are purely legal questions based on undisputed facts. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Schmeal argues for the first time on appeal that the district court engaged in improper judicial fact-finding under *Apprendi*, 530 U.S. at 490. A person must be sentenced in accordance with the sentencing provisions in effect when the crime was committed. *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018). In the complaint, Schmeal was alleged to have committed his crime in July 2017, so it was the newly amended version of K.S.A. 2017 Supp. 22-3717(d)(1)(G) that applied to his convictions. See L. 2017, ch. 62, § 10. This subsection of the statute provides:

> "(d)(1) Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:

16

. . . .

"(G)(i) Except as provided in subsection (u), persons sentenced to imprisonment for a sexually violent crime committed on or after July 1, 2006, *when the offender was 18 years of age or older*, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.

"(ii) Persons sentenced to imprisonment for a sexually violent crime committed on or after the effective date of this act, *when the offender was under 18 years of age*, and who are released from prison, shall be released to a mandatory period of postrelease supervision for 60 months, plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 2017 Supp. 21-6821, and amendments thereto." (Emphases added). K.S.A. 2017 Supp. 22-3717(d)(1)(G).

In 2017, Schmeal's crime of conviction—aggravated indecent liberties with a child—was statutorily defined as a "sexually violent crime" for purposes of imposing postrelease supervision. See K.S.A. 2017 Supp. 22-3717(d)(5)(C). The Kansas Supreme Court has held that a plea of guilty to a statutorily defined sexually violent crime provides a lawful basis to impose an extended postrelease supervision period without resort to the type of court-made factual findings disapproved by *Apprendi* and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). *State v. Walker*, 275 Kan. 46, 51, 60 P.3d 937 (2003). But Schmeal does not challenge the district court's findings that his crimes were sexually violent or that his extended term of postrelease supervision is inappropriate or illegal based on the fact that his crime of conviction was for a sexually violent crime. Instead, he argues the district court improperly determined he was 18 years or older in order to enhance his sentence of postrelease supervision from a term of months to lifetime without either (1) proving his age to a jury beyond a reasonable doubt or (2) obtaining a waiver from him relinquishing his right to have the State prove his age to a jury beyond a reasonable doubt. We are not persuaded by Schmeal's argument.

In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

The record in this case reflects that Schmeal formally acknowledged his age to the district court on numerous occasions throughout the proceedings, which necessarily renders the fact that he was at least 18 years old when he committed the crime at issue here a factual admission that does not come within the protection of the *Apprendi* rule. In the written plea-agreement he submitted to the court, Schmeal admitted he was 21 years old when he signed the agreement, which would have made him 19 years old at the time he committed the crime of conviction. When the State made its proffer of facts in response to Schmeal's no contest plea, his age was included in that proffer. When the district court accepted the proffer—without any objection from Schmeal—and found Schmeal guilty of committing the charged offense, those proffered facts became part of the record. A review of the record also reflects that Schmeal provided his age in the written financial affidavit he signed seeking court appointed counsel. Given Schmeal's repeated admissions throughout the proceedings about his age, the district court's finding that he was at least 18 years old when he committed the crime of conviction falls under the *Blakely* exception to the *Apprendi* rule when the defendant admits a fact. 542 U.S. at 303 (fact established by guilty plea).

Both parties recognize that another panel of this court considered the issue presented here in *State v. Cook*, No. 119,715, 2019 WL 3756188, at *2 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* September 9, 2019.

> "[Cook's] argument ignores some fundamental points of law. The "'statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely

18

on the basis of the facts reflected in the jury verdict or admitted by the defendant.' *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Then, in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the United States Supreme Court recognized an exception to the *Apprendi* rule when the defendant admits a fact. 543 U.S. at 244. We have admissions by Cook that lead us to conclude that there is no *Apprendi* violation here." 2019 WL 3756188, at *2.

Although *Cook* was an unpublished decision, two recent panels have found this rationale persuasive. See *State v. Zapata*, 120,529, 2020 WL 741486, at *8-9 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* March 5, 2020; *State v. Haynes*, 120,533, 2020 WL 741458, at *2-3 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* March 5, 2020. While these unpublished decisions are not binding on this court's decision, we find the analysis set forth in all three decisions to be persuasive.

Because Schmeal repeatedly admitted his age before the district court imposed lifetime postrelease supervision under the applicable statute, we necessarily conclude Schmeal was not deprived of his constitutional right under *Apprendi* to have the State prove his age to a jury beyond a reasonable doubt or to have the State obtain a waiver from him voluntarily relinquishing his right to jury trial on the issue of age for purposes of imposing lifetime postrelease supervision.

To the extent that Schmeal argues that lifetime postrelease supervision is a departure sentence based on his age, we also are unpersuaded. A sentencing court may depart from a statutory presumptive sentence only after a finding of substantial and compelling reasons to modify an offender's sentence. In this case, the statutory presumptive sentence is lifetime postrelease supervision based on Schmeal's admission that he was 18 years or older when he committed the crime of conviction. There was no requirement that the sentencing court find substantial and compelling reason to impose it. See *Haynes*, 2020 WL 741458, at *3.

19

Alternatively, even if we had found an *Apprendi* error based on the State's failure to prove Schmeal's age to a jury beyond a reasonable doubt (or to have the State obtain a waiver from him voluntarily relinquishing his right to jury trial on the issue of age), such an error is not structural but instead subject to a harmless error analysis.

In *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), the United States reviewed a case based on the premise that *Apprendi*-type error could never be harmless. Like the one here, the facts presented in *Recuenco* involved application of *Apprendi* to a sentencing enhancement, as opposed to the statutory element of the underlying criminal act. Recuenco was charged with assault with a deadly weapon, specifically a handgun. The special verdict form returned by the jury found a deadly weapon involved, but it failed to make the specific finding of a handgun. The trial court imposed a 3-year sentence enhancement for use of a gun instead of the 1-year sentence enhancement that applied to use of a deadly weapon.

In analyzing the issue, the United States Supreme Court looked to *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), a pre-*Apprendi* case in which the trial court had taken the issue of materiality from the jury in a trial involving tax fraud. The *Neder* Court concluded that refusing to instruct on the element of materiality on the fraud charges was erroneous. 527 U.S. at 8. Nonetheless, the *Neder* Court held the error was not of the type that it had previously found to be "structural error," the type of fundamental constitutional error which is so intrinsically harmful as to require automatic reversal. 527 U.S. at 8, 9-16. In discussing the applicability of the holdings in *Neder* and *Apprendi*, the *Recuenco* Court said:

> "The State and the United States urge that this case is indistinguishable from *Neder*. We
> agree. Our decision in *Apprendi* makes clear that '[a]ny possible distinction between an
> "element" of a felony offense and a "sentencing factor" was unknown to the practice of
> criminal indictment, trial by jury, and judgment by court as it existed during the years

20

surrounding our Nation's founding.' 530 U.S., at 478 (footnote omitted). Accordingly, we have treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt. Id., at 483-484. The only difference between this case and *Neder* is that in *Neder*, the prosecution failed to prove the element of materiality to the jury beyond a reasonable doubt, while here the prosecution failed to prove the sentencing factor of 'armed with a firearm' to the jury beyond a reasonable doubt. Assigning this distinction constitutional significance cannot be reconciled with our recognition in *Apprendi* that elements and sentencing factors must be treated the same for Sixth Amendment purposes." *Recuenco*, 548 U.S. at 220.

Critical to our analysis here, the *Recuenco* Court went on to conclude that "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." 548 U.S. at 222.

Both before and after the United States Supreme Court decision in *Recuenco*, our Kansas Supreme Court recognized that an *Apprendi* error may be subject to harmless error review. See *State v. Reyna*, 290 Kan. 666, 681-82, 234 P.3d 761 (2010) (applying *Neder* framework to find *Apprendi*-type error harmless), *cert. denied* 562 U.S. 1014 (2010); *State v. Daniels*, 278 Kan. 53, 64-65, 91 P.3d 1147 (noting decisions of United States Supreme Court have clarified that *Apprendi* errors are subject to harmless error review), *cert. denied* 543 U.S. 982 (2004).

Having concluded that the failure to have a jury determine a sentencing enhancement fact may be a constitutional error but that the error does not automatically entitle a defendant to a reversal, we turn now to a harmless error analysis. We begin with a review of the record to determine whether there was clear evidence which would serve as a basis for a finding of Schmeal's age at the time of the offense. A reviewing court must determine whether the record contains evidence that would lead to a contrary finding regarding the defendant's age. *Reyna*, 290 Kan. at 680. If the answer to that question is "no," any error in not submitting the issue of defendant's age to a jury may be

held harmless. 290 Kan. at 680. Here, Schmeal has failed at every stage of these proceedings, including this appeal, to challenge the accuracy of the facts in the record reflecting he was at least 18 years of age at the time of his offense. The record is void of any conflicting evidence regarding his age and, as has been established, the record is clear he was at least 18 years old at the time of his offense. Even assuming that an *Apprendi*-type error existed based on his age not being submitted to a jury for determination, we conclude any such error is harmless. See *Recuenco*, 548 U.S. 212 (failure to prove an enhanced sentencing factor to the jury beyond a reasonable doubt is an *Apprendi*-type error subject to harmless error review); *Reyna*, 290 Kan. at 681-82) (applying *Recuenco*, *Neder*, and *Daniels* framework to find *Apprendi*-type error harmless).

Affirmed.

\* \* \*

ATCHESON, J., concurring in part and dissenting in part: Defendant Joshua John Schmeal has challenged various aspects of his no contest plea and sentencing in the Riley County District Court on a single count of aggravated indecent liberties with a child stemming from his sexual encounter with a 15-year-old girl. I respectfully dissent from that part of the majority opinion upholding the district court's decision to place Schmeal on lifetime postrelease supervision—punishment that cannot be imposed in this case because he did not waive his constitutional right to have a jury determine his age as a necessary fact triggering that sentencing enhancement.

Schmeal has marshalled cases the United States Supreme Court and the Kansas Supreme Court have decided during the last 20 years limiting judicial fact-finding in sentencing in deference to criminal defendants' jury trial rights protected in the Sixth Amendment to the United States Constitution. He has augmented that authority with Kansas Supreme Court cases governing how a criminal defendant must waive those jury

trial rights and the legal impact of an ineffective or missing waiver. Those cases collectively require that Schmeal's lifetime postrelease supervision be vacated and likely replaced with 60 months of postrelease supervision. The result is almost certainly an unintended consequence. And it may be fairly characterized as stupefying; I consider it to be so, as I explain. But I am obligated (and constrained) to apply controlling authority and to render a decision consistent with that authority for better or worse.

The majority affirms lifetime postrelease supervision for Schmeal through the simple expedient of avoiding his jury waiver issue and argument. Instead, the majority addresses and rejects only Schmeal's alternative argument that he did not make a binding admission as to his age—a different, though related, issue that lends itself to a different result. Although the majority's outcome may be more palatable in this case, the approach disserves the process of judicial decision-making generally.

I do, however, agree we should affirm the district court in denying both Schmeal's motion to withdraw his no contest plea and his request for a dispositional departure. Those are decisions entrusted to the district court's sound discretion, and there was no abuse of that broad authority here.

I now turn to Schmeal's challenge to the postrelease supervision component of his sentence. In the first of three analytical segments, I set out Schmeal's argument as to why his failure to waive his right to have a jury make the factual finding triggering lifetime postrelease supervision requires that the punishment be vacated. And I explain why controlling case authority mandates that outcome, as he suggests. In the second segment, I briefly amplify on how the majority misfires in dealing with Schmeal's point. Finally, I outline my consternation with the legal authority governing the remedy for an ineffective waiver and suggest that a more appropriate remedy would allow Schmeal to either exercise or waive that right.

In a nutshell, this is Schmeal's theory:

(1) In a criminal case, the Sixth Amendment requires the prosecution to prove to a jury any fact that increases punishment above a statutory minimum or maximum, unless the defendant waives that right or stipulates to the particular fact in conjunction with a plea. Lifetime postrelease supervision is a form of punishment subject to that rule. (2) In 2017, the Kansas Legislature amended K.S.A. 22-3717, so that defendants convicted of certain forms of aggravated indecent liberties or other sex crimes would be placed on lifetime postrelease supervision if they were at least 18 years old at the time of the crime and 60 months of postrelease supervision if they were less than 18 years old. That change applies to Schmeal and makes his age a fact that increases punishment. (3) Defendants entering pleas have to be informed of and waive their right to jury trial. A defendant must be specifically advised of the right to have a jury determine a fact that increases the potential punishment for the crime to which he or she is pleading and must expressly waive that jury trial right. Schmeal was neither informed of that right nor waived it. (4) The remedy for an ineffective waiver is to vacate the resulting sentence and to remand to the district court for resentencing without considering the fact that would increase the statutory punishment. For Schmeal, the remedy would require that he be placed on postrelease supervision for 60 months rather than for the rest of his life.

In the bullet points that follow, I lay out the facts drawn from the record in this case and the legal authorities that support Schmeal's theory. They ineluctably require us to vacate the lifetime postrelease supervision because Schmeal's waiver of jury trial was deficient. But as I later explain, the linchpin case defining the remedy for an inadequate jury waiver is ill-conceived, since it affords gratuitous relief untailored to the actual injury and inevitably leads the sort of unsatisfactory outcome I believe is mandated here.

- In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that any fact other than an earlier

conviction that would elevate a criminal defendant's sentence above a statutory maximum punishment must be submitted to a jury and proved beyond a reasonable doubt. The rule entails a specific application of the Sixth Amendment right to jury trial. Four years later, the Court highlighted a corollary (and two exceptions) to the *Apprendi* rule: "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Blakely v. Washington*, 542 U.S. 296, 310, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The defendant's admission obviates the need for judicial fact-finding, since the district court may rely on the admission itself. Similarly, a defendant's consent to judicial fact-finding simply recognizes a waiver of the jury trial right from *Apprendi* by identifying the resulting process rather than right relinquished. A decade later, the Court expressly extended *Apprendi* to require that a jury find facts triggering an increase in a mandatory minimum sentence. *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). Those cases provide the core principles upon which Schmeal builds his argument.

• Postrelease supervision is a form of punishment. The Kansas Supreme Court has recognized its imposition implicates the rule of *Apprendi* and the iteration of that rule in later cases to the extent the statutory regimen relies on factual findings. See *State v. Walker*, 275 Kan. 46, 48, 60 P.3d 937 (2003); *State v. Anthony*, 273 Kan. 726, 727-28, 45 P.3d 852 (2002). In *Walker*, the defendant was convicted of what was at the time a severity level 3 violation of K.S.A. 21-3504 for aggravated indecent liberties with a child. For purposes of postrelease supervision, the offense was statutorily defined as a "sexually violent crime." Based on that classification, a district court could extend the standard period of postrelease supervision from 36 months to 60 months. The court found no *Apprendi* violation because any increase rested on the conviction itself and required no additional or independent factual finding. 275 Kan. at 51.

• The Kansas Legislature has repeatedly amended the sentencing statutes governing sex crimes and postrelease supervision in the years since *Walker* and *Anthony* were decided. Schmeal pleaded no contest to what is commonly known as statutory rape, a form of aggravated indecent liberties with a child, a severity level 3 violation of K.S.A. 2017 Supp. 21-5506(b)(1). The crime is statutorily defined as: "Sexual intercourse with a child who is more than 14 years of age but less than 16 years of age." K.S.A. 2017 Supp. 21-5506(b)(1). The age of the perpetrator is not an element of the crime. See PIK Crim. 4th 55.120.

In 2017, the Legislature amended K.S.A. 22-3717(d)(1)(G) to create two tiers of postrelease supervision for defendants convicted of sexually violent crimes. One tier requires lifetime postrelease supervision if the perpetrator was at least 18 years of age at the time of the crime. K.S.A. 2017 Supp. 22-3717(d)(1)(G)(i). The other mandates postrelease supervision for 60 months if the perpetrator was less than 18 years old. K.S.A. 2017 Supp. 22-3717(d)(1)(G)(ii). The standard period of postrelease supervision for a severity level 3 felony is 36 months regardless of the perpetrator's age. K.S.A. 2017 Supp. 22-3717(d)(1)(A). The 2017 amendment applies to Schmeal and plainly invokes a defendant's Sixth Amendment jury trial rights as recognized in *Apprendi* and *Alleyne*. Age is a fact that enhances the term of postrelease supervision for a defendant convicted of a sexually violent crime, such as statutory rape, from 60 months to life. Defendants, including Schmeal, have a right to have that fact proved beyond a reasonable doubt to a jury.

• In *State v. Duncan*, 291 Kan. 467, 467-68, 243 P.3d 338 (2010), the Kansas Supreme Court held that district courts must specifically advise criminal defendants of their Sixth Amendment right to have a jury determine a fact that may increase the statutory punishment for their crimes of conviction. In turn, a defendant also must expressly waive that particular right. A general waiver of the right to a jury trial is legally insufficient for that purpose. 291 Kan. at 472-73. The court recognized a proper waiver

effectively encompassed an informed agreement to judicial fact-finding in place of a jury determination, as outlined in *Blakely*. *Duncan*, 291 Kan. at 471-72; see *Blakely*, 542 U.S. at 310.

In *Duncan*, the district court imposed an upward durational departure—extending the defendant's term of imprisonment beyond the sentencing guidelines—based on aggravating facts it found, thereby violating *Apprendi*. The Kansas Supreme Court vacated the enhanced sentence because Duncan had not made an informed and, thus, valid waiver of his constitutional jury trial right.

The rule from *Duncan* applies here in that Schmeal had a Sixth Amendment right to have a jury determine his age as a fact that increased the punishment he faced, extending his postrelease supervision from 60 months to the remainder of his life. The record shows Schmeal was neither informed of that right and nor waived it.

Along with a plea agreement, Schmeal signed an acknowledgment of rights that stated, in part, that by entering a plea, he would be "giving up. . . [t]he right to a speedy trial before a judge or jury. . . [and] to require the state of Kansas to prove, beyond a reasonable doubt, all of the charges against me before I could be found guilty." The *Duncan* court held that sort of general language was legally insufficient to explain *Apprendi* rights or to secure their waiver. 291 Kan. at 472-73. In a separate paragraph, the acknowledgment form stated the district court had the authority to "make certain findings" that could result in "a longer or shorter sentence than the presumptive sentence." That statement actually conflicted with and misrepresented Schmeal's rights under *Apprendi*. At the plea hearing, the district court simply established that Schmeal had read, signed, and understood the plea agreement and the acknowledgment of rights. The district court did not endeavor to independently explain to Schmeal his jury trial rights or to obtain a waiver of them.

The record, therefore, demonstrates Schmeal was not informed of his right to have a jury find the fact (his age or more accurately that he was at least 18 years old when he committed the crime) that would increase the term of postrelease supervision from 60 months to life. And the record shows he did not in any way waive that right. Consistent with *Duncan*, the absence of an informed waiver from Schmeal violated his Sixth Amendment right to a jury trial. And it impaired his constitutionally protected due process rights. See *State v. Horn*, 291 Kan. 1, 11, 238 P.3d 238 (2010) (unknowing or involuntary relinquishment of constitutional right to jury trial amounts to due process violation).

• All of that brings me to what I have referred to as the linchpin: The remedy required to mend the constitutional injury occasioned by Schmeal's inadequate waiver of his right under *Apprendi* and *Alleyne* to have a jury find the fact determining the appropriate length of postrelease supervision. In *State v. Obregon*, 309 Kan. 1267, 1277-78, 444 P.3d 331 (2019), the Kansas Supreme Court held that in circumstances like this—where a defendant has not been informed of and has not waived the specific right to have a jury determine a fact that increases punishment—the appropriate remedy is a remand for resentencing without the enhancement triggered by the fact.

In that case, Obregon pleaded no contest to one count of distributing marijuana and one count of distributing cocaine. The State sought a statutory increase of six months on the prison term for each conviction because Obregon possessed a firearm during the commission of those crimes. K.S.A. 2017 Supp. 21-6805(g)(1)(A) (if defendant "carried a firearm to commit a drug felony," he or she "shall be sentenced to . . . an additional 6 months' imprisonment"). Obregon was informed that the State would seek the enhanced penalty. But the district court never advised Obregon he had a right under *Apprendi* to have a jury determine whether he had carried a firearm, and he did not waive that right.

In an unpublished opinion, a panel of this court relied principally on *Apprendi* and *Duncan* to hold that the district court committed reversible error by failing to inform Obregon of that jury trial right and then failing to secure a proper waiver. *State v. Obregon*, No. 117,422, 2018 WL 911215, at *2-3 (Kan. App. 2018) (unpublished opinion) *rev'd* 309 Kan. 1267 (2019). The court found that the appropriate remedy required a remand to the district court so Obregon could be appropriately informed of his right and either waive it or exercise it. 2018 WL 911215, at *3. If he were to elect the latter option, the district court would then empanel a jury to determine if Obregon had a firearm when he committed the crimes. His guilt or innocence of the crimes would not be before the jury, since he had been convicted of them based on his no contest pleas.[1]

[1]As a matter of full disclosure, I wrote the panel opinion.

Obregon filed a petition for review questioning the panel's remedy. In its opinion, the Kansas Supreme Court accepted the panel's conclusion that the district court violated *Apprendi*, citing the State's failure to seek review of that determination, although a different conclusion would seem to conflict with *Duncan*. *Obregon*, 309 Kan. at 1276; see *Duncan*, 291 Kan. at 472-73. Turning to the issue of remedy, the court concluded a jury trial to determine if Obregon used a firearm would be inappropriate. So the court vacated the firearm enhancement and remanded to the district court to resentence Obregon without it. 309 Kan. at 1278-79.

I see no principled legal difference between *Obregon* and this case on the matter of remedy. Adhering to *Obregon* (as we must), we should vacate Schmeal's lifetime postrelease supervision and remand for the district court to impose a term of postrelease supervision without considering Schmeal's age. I believe that would result in a 60-month period of postrelease supervision. Schmeal's conviction for a statutorily designated "sexually violent crime" extends postrelease supervision from the standard 36 months to either 60 months or life—so that increase would require no judicial fact-finding,

29

consistent with *Walker* and *Anthony*. But the imposition of 60 months or lifetime postrelease supervision depends upon a factual finding: Schmeal's age when he committed the crime. If the district court cannot make that finding or empanel a jury to do so—and it can't according to *Obregon*—then Schmeal should be sentenced to the lesser term of postrelease supervision for a sexually violent crime.

The majority avoids that result by avoiding Schmeal's argument premised on the inadequate jury waiver. Schmeal has advanced alternative grounds challenging the district court's imposition of lifetime postrelease supervision. First, he contends he never admitted to the operative fact (his age) in a manner that would support the enhanced term of postrelease supervision. Second, he contends even if he had, he never made an informed and voluntary waiver of his right to have a jury determine that fact. Those are independent bases for vacating lifetime postrelease supervision, and either one is legally sufficient to support that outcome. See *Blakely*, 542 U.S. at 310 (recognizing defendant's stipulation to required facts and defendant's consent to judicial fact-finding as distinct exceptions to *Apprendi* rule).

As I have said, the majority addresses only the first argument and barely mentions the second. That abbreviated treatment of Schmeal's dual arguments cannot justify affirming the district court. I don't further explore Schmeal's contention about his ostensible admissions of his age except to say that he has a colorable claim that random statements a defendant makes during the course of a criminal case, even directly to the district court, may not be the focused factual stipulations or concessions of the sort contemplated in *Blakely*. And a defendant's general acknowledgement of the State's factual proffer in support of a no contest plea typically would not be considered a binding admission. See *State v. Case*, 289 Kan. 457, 461, 213 P.3d 429 (2009).

Returning to *Obregon*, I fail to understand why the Kansas Supreme Court chose a remedy in that case that did not closely fit the error and, thus, created an ill-fitting

30

template for cases like this one. Ordinarily, relief granted on appeal ought to be carefully tailored to the error, avoiding a remedy either too crabbed or too expansive. The former doesn't fully undo the harm, and the latter extends an undue benefit. In many situations, an appropriate remedy should, if possible, restore the parties to their respective positions before the error and allow them to proceed anew from the point of restoration. That seems eminently sensible for this sort of mistake.

For example, Obregon complained that nobody informed him of his right to have a jury decide if he carried a firearm during the drug crimes, so he was deprived of that opportunity. The logical remedy would have restored that opportunity. Obregon, so informed of his right, might have decided against contesting the firearm enhancement. He could have waived his right to a jury and consented to judicial fact-finding. Or he could have asked for a jury trial. Permitting an informed Obregon to choose among those options would have fully and fairly remedied the specific harm. Instead, however, the court afforded him relief markedly exceeding the harm. Functionally, the court's remedy went way beyond restoring Obregon's opportunity to have a jury trial; it dispensed with the trial altogether and handed him the best possible outcome he could have achieved in that trial.

In fashioning that relief, the court offered no insuperable legal barrier to a more tailored remedy. Basically, the court found that a trial on the firearms enhancement would be contrary to the "general rule against special verdicts in criminal cases." *Obregon*, 309 Kan. at 1268. But the court acknowledged that common-law rule pertains to jury findings on liability in criminal cases—whether the defendant is guilty or not guilty. 309 Kan. at 1277-78. The court relied on *State v. Brown*, 298 Kan. 1040, 1049, 318 P.3d 1005 (2014), holding that it was error, albeit a harmless one, to submit a special question to the jury as to the defendant's age, when age was a statutory element of the charged crime. Allowing a jury to determine whether Obregon carried a firearm would not have upset that rule, since his guilt already would have been determined by his plea

31

and the resulting judgment of conviction. The same would be true here. So *Brown* and other cases requiring general verdicts on guilt in criminal cases are inapposite.

The court also embraced Obregon's argument that the Legislature had not created a procedural mechanism for a jury to consider the firearm sentencing enhancement as an exception to the "special rule" requiring general verdicts. But that is doubly off the mark, since the rule itself applies to the liability finding of guilty or not guilty rather than to a factual finding enhancing punishment. And it's a judge-made rule that doesn't require some legislative exception. The notion would seem to preclude any jury from making a firearm finding. The use of a firearm should not be submitted to the jury as if it were an element of the underlying drug offense and, thus, incorporated into the liability verdict. First, of course, it isn't an element. Second, if a jury were instructed that way and entertained a reasonable doubt about the firearm, it would then return a not guilty verdict on the underlying drug offense. But the absence of some sort of legislatively authorized mechanism apparently would preclude having a jury consider it after reaching a guilty verdict on the drug crime. So defendants asserting their *Apprendi* right to a jury trial on the firearms enhancement would necessarily escape liability for it. The same would seem to hold true for Schmeal or similarly situated defendants: If they assert their right to have a jury determine whether they were over 18 years of age for purposes of determining the length of their postrelease supervision, then there would be no way to submit that to a jury. So they could not be sentenced to lifetime postrelease supervision.

But the conundrum is a legal figment. A district court does not need specific legislative authority to submit a sentencing issue to a jury or to empanel a jury for that purpose, especially when the defendant has a Sixth Amendment right to a jury determination. The Kansas Supreme Court has suggested the Legislature may enact a detailed statutory scheme expressly *limiting* how district courts handle fact-finding for sentencing purposes and constraining their use of juries for the purpose. See *Horn*, 291 Kan. at 11-12. But, as the court recognized in *Obregon*, there are no such legislative

constraints on the fact-finding necessary for the firearm enhancement in K.S.A. 2019 Supp. 21-6805(g)(1)(A). Nor are there constraints on how a district court would treat the matter of Schmeal's age for *Apprendi* purposes.

The better remedy here would call for vacating Schmeal's postrelease supervision and remanding so the district court could inform him of his jury trial right. I readily concede that were Schmeal to exercise his right to a jury trial, the proceeding would be unusual and likely quite short. I assume the State would have little difficulty introducing convincing evidence Schmeal was more than 18 years old at the time of the crime. And I doubt Schmeal could offer much in the way of a counter. I also imagine the jurors might be perplexed as to why they had been assembled to perform their assigned task unless or until they received some after-the-fact explanation. For what it's worth, the verdict in that trial presumably would consist of a "yes" or "no" finding as to whether Schmeal was at least 18 years old on July 25, 2017, and, thus, would mirror the binary choice a jury makes in rendering a guilty or not guilty verdict. There would be no "special verdict" entailing answers to multiple questions from which the district court would fashion a determination. All of that seems both logical and sensible, if rather inefficient. But fixing things typically takes longer than doing them right the first time.

This whole exercise over lifetime postrelease supervision—whatever the correct result—presumably could have been avoided if the district court had informed Schmeal of his right to have a jury determine his age as a fact requiring he be placed on lifetime postrelease supervision and securing a waiver of that right. The county attorney could have channeled the process to that result by requiring Schmeal to waive a jury determination as a condition of any plea agreement or by requiring him to clearly stipulate during the plea hearing to his age at the time of the crime. The admission would not be inconsistent with a no contest plea. Schmeal's age was not an element of the crime, and his stipulation of that fact would not implicate him in wrongdoing.[2]

[2]If a defendant like Schmeal wanted a jury trial on liability and on age as a sentencing factor, I presume the district court would have both sides present all of their evidence to the jury. There would be no reason to bifurcate the evidence on age, since it wouldn't be inherently prejudicial to the defendant. The district court would instruct the jury on the elements of the crime and the other usual matters governing the determination of guilt or innocence. If the jury brought back a not guilty verdict, that would be the end of the matter. If the jury found the defendant guilty, the district court should, if requested, poll the jurors and otherwise accept the verdict. The district court would then inform the jurors they had another matter to consider and instruct them on determining the defendant's age at the time of the crime. The lawyers would be permitted to argue the issue to the jury. The jury would then decide that point, using a verdict form asking whether the State had proved the defendant was at least 18 years old at the time of the crime or words to that effect. As I have indicated, the verdict options would be a binary "yes" or "no."

I suppose a defendant could plead guilty or no contest to the charge and request a jury trial on only his or her age as a sentencing factor. That would, I think, be exceedingly rare in the run of cases as a tactical matter and going forward, perhaps, because astute prosecutors will insist on explicit jury trial waivers covering both liability and sentencing as a concession for favorable plea deals.

In closing, I mention why the harmless error rule the majority discusses does not obviate Schmeal's inadequate (really nonexistent) jury trial waiver on age as a sentencing factor. As I have said, the logical remedy would restore the State and Schmeal to the positions they were in before the error. That would give Schmeal the opportunity to make an informed decision on waiving or exercising his right to have a jury determine his age. The courts commonly afford that remedy for an inadequate waiver of the right to have a jury decide guilt. See *State v. Johnson*, 46 Kan. App. 2d 387, 400, 264 P.3d 1018 (2011); *State v. Larraco*, 32 Kan. App. 2d 996, 1001, 93 P.3d 725 (2004); *State v. Bell*, No. 110,550, 2014 WL 5801050, at *4 (Kan. App. 2014) (unpublished opinion). The same should hold here. The error, however, cannot be treated as contaminating any other components of the case disposition. Schmeal, therefore, would have no valid claim for withdrawing his plea and the resulting finding of guilt on the charged crime because of the botched jury waiver on age as a sentencing factor.

The analytical model for harmless error used in *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), and *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), is, by contrast, inapposite. In those cases, the Court found no reversible error when an issue that should have been submitted to a sitting jury wasn't. The Court reviewed the actual evidence presented to the juries and the lawyers' arguments to the juries. Because the real-life evidence supporting the omitted issue in each case was overwhelming and undisputed and because the real-life defense lawyer never contested the issue in front of the jury, the Court held it could reasonably conclude the outcome would have the same if the issue had been submitted to the jury—the very definition of a harmless error. See *Washington*, 548 U.S. at 220-21 (expressly invoking rationale of *Neder* to find harmless error in failing to submit sentencing factor for jury's consideration at trial); *Neder*, 527 U.S. at 17 (The omission of an element of the charged crime in a jury instruction may be deemed harmless when the "element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.").

Here, however, there was no real-life jury trial, no real-life evidence, and no real-life defenses presented to the jury. We would have to invent a hypothetical trial to a hypothetical jury with hypothetical evidence and hypothetical arguments. That would go at least one giant step over the line between reasoned judicial analysis and ungirded speculation akin to impermissibly directing a verdict in a criminal case. See *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73, 97 S. Ct. 1349, 51 L. Ed. 2d 642 [1977]) (directing verdict in criminal case violates defendant's Fourteenth Amendment due process rights and Sixth Amendment jury trial rights); *State v. Brice*, 276 Kan. 758, Syl. ¶ 2, 80 P.3d 1113 (2003).

In sum, Schmeal has been deprived of a fundamental right, and the proscribed remedy, as much as I might consider it ill-conceived, calls for vacating the district court's

imposition of lifetime postrelease supervision. The case should be remanded with directions for the district court to resentence Schmeal to a postrelease supervision term of 60 months. I, therefore, respectfully dissent from my colleagues' decision to affirm on this point.